## THE PEOPLE v. WALTER BUSSELL.

*Inconsistent statutes—When the later repeals the former—Increased penalties.*

1. Defendant was convicted of a violation of Act 351, Local Acts of 1879, as amended by Act 419, Local Acts of 1881, entitled: "An act to prevent the sale of unsound meat or provisions in the city of Detroit."

   *Held*, that as the charter of said city, Act 326, Local Acts of 1883, authorized the common council to "prohibit, prevent and suppress the sale of every kind of unsound, putrid and unwholesome meat and provisions" in said city, with power to impose greater penalties than those prescribed in the former act, it repealed the act of 1879 as inconsistent with said charter.

2. The fact that the record fails to disclose whether or not the common council has acted under the power given in said charter cannot be permitted to influence the above result, the main question being, and to which inquiry must be directed, whether the two acts are inconsistent, and whether the Legislature intended by the subsequent act to repeal the former.

Certiorari to Detroit Police Justice. Argued October 14 and 15, 1885. Decided January 20, 1886. Conviction reversed. The facts are stated in the opinion.

*Cheever & Underwood,* for defendant.

*Edwin F. Conely,* for People.

The briefs contain an elaborate discussion of the constitutionality of the act under which the conviction was had.

CHAMPLIN, J. The respondent is a butcher, residing and carrying on business in the city of Detroit. Upon the rear part of his premises, situated at No. 821, Grand River avenue, he has a slaughter-house, in which he slaughters animals for his business. On the twelfth of May, 1885, Amos S. Lane, a meat inspector in the city of Detroit, duly appointed by the board of metropolitan police, went to defendant's premises and requested admission to the slaughter-house for the purpose of inspecting the premises, and respondent, being present, refused to allow or permit the inspector to enter upon the premises for the purpose stated. Thereupon complaint was made before a police justice of the city, and the respondent was brought before the justice, when a trial was had, and the respondent convicted and sentenced to pay a fine of twenty-six dollars. Thereupon respondent sued out a writ of certiorari to this Court.

By an act of the Legislature, passed in 1879 and amended in 1881, the following law was enacted:

"An act to prevent the sale of unsound meat or provisions in the city of Detroit.
"Section 1. *The People of the State of Michigan enact,* That it shall be unlawful for any person to sell, offer for sale, or expose for sale, within the limits of the city of

Detroit, any diseased, bruised, decaying, emaciated, tainted, or putrid meat or provisions, or the meat of any calf less than four weeks old.

"Sec. 2. It shall be unlawful for any person to bring or slaughter, within the limits of the city of Detroit, any animal which is maimed, bruised, afflicted with swellings, sores, or disease of any kind, or the meat of any such animal.

"Sec. 3. Any person who shall violate any of the provisions of the preceding sections shall be punished by a fine not less than ten dollars or not to exceed one hundred dollars, or by imprisonment not to exceed three months, or by both such fine and imprisonment, in the discretion of the court.

"Sec. 4. It shall be the duty of the board of metropolitan police commissioners of the city of Detroit to appoint an inspector, who shall be a person of previous practical experience as a butcher or veterinary surgeon, to enforce the provisions of this act. Said inspector may be created a captain, sergeant, or roundsman of the police force of said city of Detroit, at the option of the board.

"Sec. 5. It shall be the duty of said inspector to personally view, so far as possible, all animals exposed for sale for human food in said city, to visit all slaughter-houses in said city, and to inspect all animals held in them for slaughter, and the carcasses of all animals already slaughtered for human food, and to visit all places where meat for human food is kept or exposed for sale, and to inspect and ascertain the condition of said meat. The said inspector shall have authority, and it shall be his duty, to condemn, seize, and confiscate any meat or provisions sold, offered or exposed for sale, in violation of the terms and requirements of this act. He may detain any patrolman of said city to perform any or all of the duties enjoined on him by this act: *Provided*, always, that said inspector and any policeman so detailed shall always be subject to the provisions of law establishing and governing the metropolitan police of said city.

"Sec. 6. It shall be the duty of said inspector, or of any patrolman detailed as provided in the preceding section, to make complaint in writing before the police justice of said city of every violation of this act coming to his knowledge.

"Sec. 7. Each animal driven, brought, or slaughtered, and each piece of meat or quantity of provisions sold or exposed for sale, contrary to the provisions of this act, shall constitute a separate offense.

"Sec. 8. Any person who shall refuse to permit the said inspector or detailed patrolman to perform his duty under this act, either by refusing entrance to his premises, or by concealing any meat, animal, or provisions, or by refusing to permit said animal, meat, or provisions to be viewed and inspected as provided herein, or by, in any manner, hindering or resisting said inspector or patrolman in the performance of his duty, shall be guilty of a misdemeanor, and punished therefor in the same manner as provided in section three."

It was under the provisions of this act that the respondent was convicted. The legality of the conviction and sentence is challenged upon the ground that the law is unconstitutional and void, for the reason that it subjects the premises and property of a person to examination, inspection, and search without due process of law. These and other objections taken to the validity of the law, in the view we take of the existing statutes upon the subject, we do not find it necessary to consider.

Upon the argument of the case, we called attention of the counsel for the People to the provisions of the charter of the city of Detroit, enacted in 1883, and asked him to express his views upon the effect of the charter upon the act in question, which he did at length. The provisions of the charter referred to read as follows:

"Sec. 42. The council shall have power to provide for the preservation of the general health of the inhabitants of said city, to make regulations to secure the same, * * * to prohibit, prevent, abate, and remove all nuisances in said city, or within the distance therefrom of half a mile, and to punish the authors and [or] maintainers thereof, and authorize and direct the speedy or immediate abatement or removal of nuisance by some officer of the city. * * * It shall also have power and authority to compel the owner or occupant of any grocery, * * * butcher's shop or stall, slaughter-house, * * * to cleanse or abate the same, whenever necessary for the health, comfort, or convenience of the inhabitants of said city; to prohibit and prevent any person * * * keeping or having, on premises owned or occupied by him, in said city, any dead carcass, putrid or unsound beef, pork, * * * and any article, substance,

or thing that is unwholesome or nauseous, and to compel and authorize the removal thereof by some officer of said city; or to compel any person so bringing, depositing, or leaving within the limits of said city, or within one mile distant therefrom, or keeping or having on the premises owned or occupied by him in said city any dead carcass, putrid, or unsound beef, pork,  *   *   *  and any article, substance, or thing that is unwholesome or nauseous, and to compel and authorize the removal thereof by some officer of said city; or to compel any person so bringing, depositing, or leaving the same within the limits of said city, or one mile distant therefrom, or having or keeping the same on the premises owned or occupied by him in said city, to remove the same."

"Sec. 44. The common council  *   *   *  shall have power to prohibit and prevent, within certain limits in said city to be determined by the common council, the location or construction of  *   *   *  slaughter-houses,  *   *   * and all establishments where any nauseous, offensive, or unwholesome business may be carried on; and such buildings  *   *   *  and establishments, as aforesaid,  *   *   * shall be subject to such regulations in relation to their construction and management as the common council may make, with a view to the protection of any property from injury by fire, or to the health and safety of the inhabitants of the city, and to prevent their becoming in any way a nuisance."

"Sec. 48. The said council shall have power to prohibit, prevent, and suppress the sale of every kind of unsound, nauseous, and unwholesome meat, poultry, fish, vegetables, or other articles of food and provisions,  *   *   *  and to punish all persons who shall knowingly sell the same, or offer to keep the same for sale."

"Sec. 52. The common council shall have power to appoint one or more inspectors  *   *   *  of articles to be inspected,  *   *   *  and to prescribe and regulate their powers and duties  *   *   *  to direct and regulate  *   * the inspecting of vegetables, fresh, dried, smoked, salted, pickled, and other meat or fish,  *   *   *  and other food or provisions, to be sold at wholesale or retail; the inspecting and weighing of flour,  *   *   *  beef, and all other food and provisions."

"Sec. 54. The common council shall have power to provide for the imprisonment and confinement in houses of correction, at hard labor or otherwise, of all persons liable to

be imprisoned or confined under this act, or any act relating to said city, or any ordinance of the common council. * * Said council shall also have power, except as herein otherwise specified, to provide for the punishment of all persons offending against this act, or any law relating to said city, or any ordinance of the common council, enacted under this or any other act of the Legislature, by imposing fines, penalties, forfeitures, and costs, and by imprisonment in the house of correction of said city. * * * If only a fine, penalty, forfeiture, or costs be imposed, the offender may be sentenced to imprisonment until payment thereof, for a term not exceeding six months. All punishments for offenses against the ordinances of the common council, shall be prescribed in the ordinance creating or specifying the offense to be punished; and no penalty or forfeiture shall exceed one thousand dollars, no fine shall exceed five hundred dollars, and no imprisonment shall exceed the period of two years." Chapter 7, Act No. 326, Local Acts, 1883.

"Sec. 50. All acts or parts of acts inconsistent with the provisions of this act are hereby repealed." Chapter 12.

If the former act is inconsistent with the latter, then it is repealed. On the other hand, if it is not—if both acts can be given full force and effect without conflicting with each other—if the latter act is merely affirmative or cumulative or auxiliary, and not inconsistent, both must stand, and the former is not repealed. Both are local acts of the Legislature, enacted exclusively for, and operative only in the city of Detroit. It is apparent that section 48 of the charter is directed to the same subject-matter as section 1 of the former act, and is broad enough in its language to cover every article intended for human food embraced in section 1, which relates only to meat and provisions. Section 48 does not in terms mention the meat of any calf less than four weeks old, but it does authorize the council to prohibit, prevent and suppress the sale of every kind of unsound, nauseous, and unwholesome meat. This is as broad as the title of the act of 1879, as amended in 1881, which is an act to prevent the sale of unsound meat; and if a calf under four weeks old is unsound meat, both acts cover it as such; while if it is not unsound, but is unwholesome, it is covered by the latter act. By this section of the charter the Legislature

delegated to the common council plenary power to prevent and suppress the sale of unsound meat or provisions in the city of Detroit. By section 42 the subject-matter of slaughter-houses and nuisances generally are placed under the regulation and control of the common council, and by section 52 they are authorized to appoint inspectors of meat and other food and provisions, to be sold at wholesale or retail.

When the law-making power conferred this authority thus unreservedly upon the common council, it manifested the legislative intent to abrogate the former act upon the same subject. This appears from the facts that the common council is authorized by the subsequent act to prohibit, prevent, and suppress the sale of unsound, putrid, and unwholesome meat and provisions; and to appoint inspectors, and to compel the removal of any dead carcass, putrid, or unwholesome meat, or any article or thing that is unwholesome, by some officer of the city, and to punish the infraction of the ordinances enacted by them under such grant of power by fines, penalties, forfeitures, and imprisonment; thus comprehending the whole scope, object and end of the act of 1879, as amended in 1881. If the Legislature in the subsequent act had restricted the council in the punishment to the same measure prescribed by the former act, the latter act might, by a liberal construction, have been deemed merely cumulative and auxiliary to the other; but it did not do so. On the contrary, it delegated to the common council the power to inflict a fine of not more than $500, and imprisonment not more than two years. This fact, in considering whether a former statute is inconsistent with a later one upon the same subject-matter, is regarded as conclusive; for it is not to be supposed that the Legislature would intentionally be guilty of subjecting the citizen to the observance of two local laws upon the same subject-matter, for the infraction of one of which he would be liable to be punished only by a fine of not less than ten nor more than one hundred dollars, or imprisonment not to exceed three months, or both, in the discretion of the court, and for pre-

cisely the same offense under the other he might be made liable to a fine not exceeding $500, or to an imprisonment not exceeding two years. Moreover, if both of these laws are capable of being enforced at the same time, no reason is perceived why a person may not be punished for violating the statute, and the ordinances enacted in pursuance of the power delegated, for the same offense under both laws. Again, if the common council should enact an ordinance making the penalty either more or less severe than that prescribed by the former act, one person may be complained of and punished under the act of 1881, and his neighbor, for precisely the same offense, may be complained of under the ordinance and a different punishment imposed not possible under the other act; thus bringing disgrace upon the administration of justice. Two enactments of the Legislature of a local nature which may lead to such results are inconsistent with each other, and the former is repealed by the latter. In granting this power to the common council, the Legislature intended it would be exercised, if occasion called for it, to preserve or protect the public health; and the grant embraced the whole ground covered by the provisions of the former act. It likewise introduces some new qualifications or modifications; and where a later act does this, the former must necessarily be repealed—the two cannot stand together. So, also, a law directing a thing to be done in a certain manner, implies that it shall not be done in any other manner : *U. S. v. One Case of Hair Pencils*, 1 Paine, 406.

The charter introduces some modifications of the former law in respect to the body which appoints the inspector, and in the officer who shall remove the unwholesome articles which are exposed for sale, and also in the penalties imposed, and it directs the inspector to be appointed by the common council, and this implies that he shall not be appointed by the board of metropolitan police commissioners. It directs that the carcass of the meat which is found to be unwholesome shall be removed by an officer of the city; and this implies that it shall not be done by an inspector appointed by the board: *Bartlet v. King*, 12 Mass. 537; *Com. v.*

*Cooley*, 10 Pick. 36; *Pierpont v. Crouch*, 10 Cal. 315; *Norris v. Crocker*, 13 How. 429; Sedg. St. Law, 126; *U. S. v. Tynen*, 11 Wall. 88.

In the case of *State v. Whitworth*, 8 Port. (Ala.) 434, the court said:

"The act of 1829 inhibiting gaming, covers the whole ground of the previous statute, so far as the keeping, exhibiting, carrying on, or being in any manner interested in, any gaming-table or bank whatever is concerned, and includes every offense connected with the subject-matter: and, as it provides a different, and in some respects a milder, punishment for these offenses than the previous statutes, it repeals them so far as the same offenses are provided to be punished by it."

See, also, *Nichols v. Squire*, 5 Pick. 168; *Rex v. Cator*, 4 Burr. 2026; *Leighton v. Walker*, 9 N. H. 59; *Milne v. Huber*, 3 McLean, 212; *Adams v. Ashby*, 2 Bibb, 96; *Com. v. Kimball*, 21 Pick. 373.

The fact that the ordinances of the common council are not before us, and nothing in the record discloses whether or not the common council has acted under the power given by the charter above quoted, cannot be permitted to influence the result at which we have arrived; the main question being, and to which inquiry must be directed, whether the two acts are inconsistent, and whether the Legislature intended by the subsequent act to repeal the former. From a comparison of the two acts, we have no doubt that such was the effect of the subsequent enactment, and that such was the intention of the Legislature, as derived from the language of the statute under consideration.

The important questions presented by counsel are not properly before us upon this record. The conviction must be reversed, and the respondent discharged.

CAMPBELL, C. J., and MORSE, J., concurred. SHERWOOD, J., concurred in the result.