BOARD OF SUPERVISORS OF SAGINAW CO. *v.* HUBINGER.

1. STATUTES—REPEALS BY IMPLICATION—COUNTY ROADS.

The provisions of Act No. 335, Local Acts 1901, amending Act No. 419, Local Acts 1899, relating to a system of county roads for Saginaw county, are inconsistent with the provisions of sections 26 and 27, Act No. 230, Pub. Acts 1895, providing for a township road system, and therefore repeal by implication the last-named act so far as it applies to Saginaw county.

2. SAME—REPEALS—PRESUMPTIONS.

The presumption is against making a statute irrepealable.

3. CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS — MUNICIPAL CORPORATIONS.

A township cannot claim that an act of the legislature, exempting such townships from taxation for county road systems as shall establish a township road system, constitutes a contract, the obligations of which a subsequent legislature cannot impair by repealing the act, as the municipality is but a government agency.

Certiorari to Saginaw; Snow, J. Submitted February 2, 1904. (Calendar No. 20,351.) Decided July 7, 1904.

Mandamus by the board of supervisors of Saginaw county to compel John G. Hubinger, as supervisor of Frankenmuth township, to spread certain county road taxes upon the rolls of said township. From an order denying the writ, relator brings certiorari. Reversed.

*John F. O'Keefe* (*James H. Davitt*, of counsel), for relator.

*Ferdinand Brucker* and *Fred L. Travers*, for respondent.

MOORE, C. J. Application was made in the court below for mandamus to compel the respondent, John G.

Hubinger, as supervisor of the township of Frankenmuth, in Saginaw county, to spread upon the rolls of his township certain county road taxes, as ordered by the board of supervisors under the authority of Act No. 419 of the Local Acts of 1899, as amended by Act No. 335 of the Local Acts of 1901. The circuit judge declined to issue the writ. This is certiorari to review his action.

It is the claim of the respondent that it had a township road system, making Act No. 419, Local Acts 1899, as amended by Act No. 335, Local Acts 1901, inapplicable to it.

Act No. 230, Pub. Acts 1895, has the following provisions: Section 26 of this amendment provides:

"That any township in any county in the State, except Marquette, * * * where the board of supervisors refuse to submit the question of adopting the county road system, or where the question has been submitted and it has failed to carry, may submit the question of a township system of roads in the same manner and by the same proceedings as is prescribed for the county road system, by substituting the words township board for board of supervisors, and township clerk for county clerk, and township roads for county roads."

Section 26 also provides:

" That the township board of any township adopting such road system shall, by resolution to be entered of record, designate the roads and bridges within such township to be built or maintained under such road system, and shall determine the amount of tax to be raised in such township for each year for that purpose."

Section 27 provides:

" That any township that shall adopt the provisions of the act, and shall raise money and build roads in good faith, shall not, without their consent by a two-thirds vote, be liable to any tax for a county road system, should the county in which said township is situated afterwards adopt the county road system."

It is claimed by respondent that its system of roads is governed by these provisions, and that these provisions

are not repealed by the local act of 1899. It is conceded they are not repealed in direct terms, and it is also conceded repeals by implication are not favored, but it is insisted the provisions of the local act are inconsistent with the provisions of the earlier act, and thereby repeal it.

We have already quoted from the earlier act, which the township claims should govern its highway system. The local act and its amendments already mentioned relate to Saginaw county alone. They are too long to insert here, but a reference to section 24, Act No. 335, Local Acts 1901, and sections 25, 26, 27, and 28 of Act No. 419, Local Acts 1899, will show provisions in relation to the control of the roads in the county, their improvement, and the raising of the funds to pay therefor, that are inconsistent with the idea that the township of Frankenmuth may control its own roads. There is no provision in the local acts that Frankenmuth shall be exempt from its provisions. We think it follows that the provisions of the entire act are repealed by implication. See 23 Am. & Eng. Enc. Law (1st Ed.), 479; *Morrison* v. *Kent,* 135 Mich. 38 (97 N. W. 45); *People* v. *Bussell,* 59 Mich. 104 (26 N. W. 306); *People* v. *Furman,* 85 Mich. 110 (48 N. W. 169); *Attorney General* v. *Parsell,* 100 Mich. 170 (58 N. W. 839); *Porter* v. *Edwards,* 114 Mich. 640 (72 N. W. 614); *Graham* v. *Muskegon County Clerk,* 116 Mich. 571 (74 N. W. 729); *Attorney General* v. *Commissioner of Railroads,* 117 Mich. 477 (76 N. W. 69).

It is claimed that, as the township acted under the legislation of 1895, it constituted a contract, which could not by subsequent legislation be impaired without doing violence to section 10, art. 1, of the Federal Constitution, and section 43, art. 4, of the State Constitution.

The presumption is against making a statute irrepealable. Black on Inter. of Laws, § 51, and authorities cited; Cooley, Const. (6th Ed.) p. 146.

We have examined the authorities cited by counsel for respondent in support of their proposition, but none of them relate to legislative action of the character involved.

here.   In the sixth edition of Cooley on Constitutional Limitations, p. 331, where there is a discussion relating to laws which impair the obligation of contracts, it is said:

"But can these laws be regarded as contracts between the State and the officers and corporations who are, or the citizens of the State who expect to be, benefited by their passage, so as to preclude their being repealed?   On these points it would seem that there could be no difficulty. When the State employs officers or creates municipal corporations as the mere agencies of government, it must have the power to discontinue the agency whenever it comes to be regarded as no longer important.   The framers of the Constitution did not intend to restrain the States in the regulation of their civil institutions adopted for internal government.   *   *   *

"And although municipal corporations, as respects the property which they hold, control, and manage, for the benefit of their citizens, are governed by the same rules and subject to the same liabilities as individuals, yet this property, so far as it has been derived from the State, or obtained by the exercise of the ordinary powers of government, must be held subject to control by the State, but under the restriction only that it is not to be appropriated to uses foreign to those for which it has been acquired. And the franchises conferred upon such a corporation for the benefit of its citizens must be liable to be resumed at any time by that authority which may mold the corporate powers at its will, or even revoke them altogether.   The greater power will comprehend the less."

See, also, the long note at the bottom of page 333 for a further discussion of the question.

The case of *New Orleans* v. *Waterworks Co.*, 142 U. S. 79 (12 Sup. Ct. 142), is an instructive one.   In that case it was claimed by the city that legislation had been passed which impaired the obligation of contracts.

In disposing of the case, Justice Brown used the following language:

"The city, being a municipal corporation and the creature of the State legislature, does not stand in a position to claim the benefit of the constitutional provision in ques-

tion, since its charter can be amended, changed, or even abolished at the will of the legislature. In the *Dartmouth College Case*, 4 Wheat. 518, 660, 661, in which the inviolability of private charters was first asserted by this court, a distinction is taken, in the opinion of Mr. Justice Washington, between corporations for public government and those for private charity; and it is said that the first, being for public advantage, are to be governed according to the law of the land, and that such a corporation may be controlled, and its constitution altered and amended, by the government, in such manner as the public interest may require.

"'Such legislative interferences cannot be said to impair the contract by which the corporation was formed, because there is in reality but one party to it; the trustees or governors of the corporation being merely the trustees for the public, the cestui que trust of the foundation.'

"Mr. Justice Story was also of opinion (page 694) that 'corporations for mere public government, such as towns, cities, and counties, may in many respects be subject to legislative control.'

"In the case of *Town of East Hartford* v. *Hartford Bridge Co.*, 10 How. 511, 533, 534, the constitutionality of an act of the legislature discontinuing a ferry, the franchise of which for more than 100 years had belonged to the town of Hartford, and subsequently to that of East Hartford, was drawn in question. It was claimed by the town that the State had impaired the obligation of its contract, but it was held that:

"'The parties to this grant did not, by their charter, stand in the attitude toward each other of making a contract by it such as is contemplated in the Constitution, and as could not be modified by subsequent legislation. The legislature was acting here on the one part, and the public municipal and political corporations on the other. * * * The grantees likewise, the towns being mere organizations for public purposes, were liable to have their public powers, rights, and duties modified or abolished at any moment by the legislature. * * * Hence, generally, the doings between them and the legislature are in the nature of legislation, rather than compact, and subject to all the legislative conditions just named, and therefore to be considered as not violated by subsequent legislative changes.'

"So, in *Laramie County Com'rs* v. *Albany County*

*Com'rs*, 92 U. S. 307, 311, it was held that the legisla-
ture had power to diminish or enlarge the area of a
county whenever the public convenience or necessity re-
quired.

" 'Institutions of the kind,' said Mr. Justice Clifford, 'whether
called counties or towns, are the auxiliaries of the State in the im-
portant business of municipal rule, and cannot have the least preten-
sion to sustain their privileges or their existence upon anything like
a contract between them and the legislature of the State, because
there is not, and cannot be, any reciprocity of stipulation, and
their objects and duties are utterly incompatible with everything
of the nature of compact.'

" So, in the recent case of *Williamson* v. *New Jersey*,
130 U. S. 189, 199 (9 Sup. Ct. 453), it was held that the
power of taxation on the part of a municipal corporation
is not private property or a vested right of property in its
hands, but the conferring of such power is an exercise by
the legislature of a public and governmental power, which
cannot be imparted in perpetuity, and is always subject to
revocation, modification, and control, and is not the sub-
ject of contract.

" Said Mr. Justice Blatchford:

" 'We are clearly of opinion that such a grant of the power of
taxation by the legislature of a State does not form such a contract
between the State and the township as is within the protection of
the provision of the Constitution of the United States which forbids
the passage by a State of a law impairing the obligation of con-
tracts.'

" At the last term of this court, in the case of *Essex
Public Road Board* v. *Skinkle*, 140 U. S. 334 (11 Sup.
Ct. 790), it was held—the Chief Justice speaking for the
court—that an executive agency created by a State for the
purpose of improving public highways, and empowered to
assess the cost of its improvements upon adjoining lands,
and to purchase such lands as were delinquent in the pay-
ment of the assessment, did not by such purchase acquire
a contract right in the land so bought, which the State
could not modify without violating the provisions of the
Constitution of the United States.    But further citations
of authorities upon this point are unnecessary.    They are
full and conclusive to the point that the municipality, be-
ing a mere agent of the State, stands, in its governmental
or public character, in no contract relation with its sov-

ereign, at whose pleasure its charter may be amended, changed, or revoked without the impairment of any constitutional obligation, while with respect to its private or proprietary rights and interests it may be entitled to the constitutional protection. In this case the city has no more right to claim an immunity for its contract with the waterworks company than it would have had if such contract had been made directly with the State. The State, having authorized such contract, might revoke or modify it at its pleasure."

Applying this reasoning to the case at bar, we have no difficulty in reaching the conclusion that the local acts were not unconstitutional. The other questions raised have been examined, but we do not deem it necessary to discuss them.

The supervisor of Frankenmuth should have obeyed the instruction of the board of supervisors to spread the tax upon the roll, and it is so ordered.

The other Justices concurred.