JOHN W. FEEK v. THE TOWNSHIP BOARD OF BLOOM-INGDALE.

*Constitutional law—Local option law—Title of act—Delegation of legislative power.*

1. Act No. 207, Laws of 1889 (known as the "Local Option Law") is not unconstitutional.
2. In passing upon the question of the constitutionality of Act No. 207, Laws of 1889, known as the "Local Option Law," the following points are decided:

   *a*—Viewing the act as a whole, we find it to be a law the object of which is to prohibit the manufacture, sale, etc., of intoxicating liquors at the option of the local authorities of any county of this State. In reaching that object, the Legislature saw fit to provide for delegating to the board of supervisors the authority to legislate or to make a certain order upon the subject. Prohibition is the end provided for, and the board of supervisors are constituted the means to attain that end. The object is single, and all the instrumentalities are designed to attain that object; and we can see no constitutional objection to the title of the act.

   *b*—When the Constitution (Art. 4, § 38) granted to the Legislature the right to confer upon the board of supervisors of the several counties such powers of a local, legislative, and administrative character as they may deem proper, the Legislature was invested with authority to prescribe how, when, in what manner, and upon what conditions the power thus delegated might be exercised; and we think it not an unreasonable restraint upon the exercise of this legislative power that they should not undo their action in two years.

   *c*—The action of the board of supervisors in completing the canvass of the votes actually returned, in the absence of a return from any township, ward, or election district, if satisfied that the failure to vote or make a return is for the purpose of preventing a full expression of the will of the electors upon the proposition submitted, involves no judicial action or determination, but is wholly administrative.

   *d*—There is no written provision in the Constitution forbidding the Legislature from enacting laws for particular localities, or suspending the general laws in certain localities; and if such prohibition exists it must come from some great underlying

principle of right and justice inherent in the nature and spirit of the social compact, whose universal application and binding authority command the assent of every freeman.

*e*—No such underlying principle as that the Legislature shall not enact laws for a particular locality, different from those applicable to other portions of the State, or, which is the same thing, shall not suspend the operation of general laws as to any particular locality, has ever been recognized in this State. On the contrary, there is an unbroken record of instances where such legislation has been had without question, and such laws have been upheld by the decisions of this Court.

*f*—The Legislature, in conferring upon the board of supervisors the authority to order the prohibition within the county of the manufacture and sale of intoxicating liquors, had the constitutional right to prescribe as a condition to its exercise that the majority of the legal electors should first vote in favor of such prohibition.

*g*—The proposition that it is legal and competent for the Legislature to provide that a law shall go into effect upon the happening of a contingency is too clear to require the citation of authorities.

*h*—It makes no difference with the constitutionality of the law whether the action of the board of supervisors in ordering prohibition in the county is called an exercise of legislative or administrative power. In either case it is authorized by the authority of the Legislature, conferred under the provision of the Constitution sanctioning it, and when such order is made it is the *law* that prohibits, and not the board of supervisors.

*Mandamus.* Submitted June 12, 1890. Denied October 10, 1890.

Relator applied for *mandamus* to compel the approval of a liquor bond under Act No. 313, Laws of 1887. The facts are stated in the opinion.

*Irish & Knappen,* for relator.

*B. W. Huston,* Attorney General, for respondents.

[The points of counsel are fully discussed in the opinion.—REPORTER.]

CHAMPLIN, C. J. The relator asks for a *mandamus* to

compel the township board to approve a liquor bond presented by the relator under Act No. 313, Laws of 1887. The township board refused to entertain jurisdiction for reasons stated in their answer to the petition as follows:

"The said respondents further show unto the Court that the said township board refused to approve said bond of the said John W. Feek, said bond being presented to said board as a liquor bond for said Feek, who was desirous of and intended to engage in the business of selling and keeping for sale spirituous and intoxicating liquors at retail in said township, for the reason that the board of supervisors of the county of Van Buren, in which said township is situated, in pursuance of Act No. 207 of the Public Acts of the Legislature for 1889, adopted a resolution prohibiting the sale of intoxicating liquors, or any mixed liquor or beverage any part of which is intoxicating, as provided in section 13 of said act; that, before the adoption of said resolution by said board of supervisors, the will of the qualified electors of said county was ascertained whether or not the manufacture of liquors and the liquor traffic should be prohibited within the limits of said county; and that, in order to ascertain the will of the electors aforesaid by an election, as provided in said Act 207, all of the provisions of sections three, four, five, six, seven, eight, nine, ten, eleven, and all the other provisions of said law in regard to the election therein provided, were in every particular complied with and performed, and, upon the canvass of the votes of the said board of supervisors, as required by law, it was ascertained that a majority of the legal voters of said county had voted in favor of prohibiting the manufacture of liquors and the liquor traffic in said county. The election aforesaid was held on Monday, the 24th day of February, 1890.

"That the result of the county canvass showed a majority of all the legal votes cast were in the affirmative of the proposition to prohibit within said county the manufacture of liquors and the liquor traffic, and the said board of supervisors, after the canvass as aforesaid, so determined and declared, and thereupon the said board of supervisors did adopt a resolution by a majority vote of all the members elect ordering the prohibition within the limits of said county of Van Buren of the manufacture,

sale, keeping for sale, giving away, or furnishing of any vinous, malt, brewed, fermented, spirituous, or intoxicating liquors, and prohibiting the keeping of a saloon, or any other place, where such liquors are manufactured, sold, stored for sale, given away, or furnished; that said resolutions were adopted at the meeting of the board of supervisors at which said canvass was made, and more than forty days before the 1st day of May, 1890, and that all the provisions of section 13 of said act, so far as the same refers to the duty of said board òf supervisors, were fully complied with and performed by said board of supervisors.

"The respondents aver and state that all the steps required to be taken and performed under Act 207 aforesaid, to ascertain the will of the legal electors of Van Buren county aforesaid in regard to the manufacture of liquor and liquor traffic therein, have been taken, and that the election was legal and valid, and the affirmative proposition aforesaid legally adopted, and so determined by the said board of supervisors, and the resolution aforesaid of said board of supervisors also was legally adopted; and respondents submit to this honorable Court that said Act 207 is not unconstitutional and void, but, on the contrary, is legal and valid, and that it was the duty of respondents to refuse to act on said bond, and that the *mandamus* ought to be denied."

Counsel for relator insist that Act No. 207 is unconstitutional for the following reasons:

"1. Because the said law embraces more than one object.
"2. Because the objects are not all embraced in the title.
"3. Because the bill, under its title as published, is a new bill, introduced after the first fifty days of the legislative session had expired.
"4. Because the act authorizes the board of supervisors of a county to spread upon their records the inde-'pendent action of the county clerk, without proof of such action, and to make it evidence that cannot be contra-'dicted.
"5. Because, in terms, said act confers judicial power upon the board of supervisors.
"6. Because said act contains no provision for giving notice of the popular election to township boards and

common councils, who have authority under it to designate the places for such election to be held.

"7. Because the said act confers the final power upon the board of supervisors to declare an illegal election a valid one.

"8. Because the act confers upon the board of supervisors the power to adopt irrepealable legislation.

"9. Because the act does not provide for definite publication of the resolution of the board of supervisors.

"10. Because proof of publication is not made necessary in proof of the law.

"11. Because the legal act of posting a United States internal revenue receipt is made evidence of crime.

"12. Because the act assumes to delegate legislative power to the people of counties.

"13. Because said act attempts to delegate to the people of counties the power to supersede and suspend, not only the general laws of the State in force at the time of the passage of said act, but also such general laws as may be passed in the future.

"14. Because said act does not take effect upon the judgment and determination of the Legislature, but upon the judgment and determination of the people of the counties acting jointly with the board of supervisors.

"And for the further reason that said act is opposed to the constitutional provisions and policy designed to secure representative government."

Act No. 207 is entitled as follows:

"An act to prohibit the manufacture, sale, keeping for sale, giving away, or furnishing of vinous, malt, brewed, fermented, spirituous, or intoxicating liquors, or any mixed liquor or beverage any part of which is intoxicating, and to prohibit the keeping of any saloon or other place for the manufacture, sale, storing for sale, giving away, or furnishing of such liquors or beverages, and to suspend the general laws of the State relative to the taxation and regulation of the manufacture and sale of such liquors in the several counties of this State under certain circumstances; to authorize the qualified electors of the several counties in this State to express their will in regard to such prohibition by an election; and to authorize and empower the board of supervisors of the several counties, after such election, if they shall determine the result to be in favor of such prohibition, to prohibit the

manufacture, sale, keeping for sale, giving away, or furnishing of any such liquors, or the keeping of a saloon or any other place for the manufacture, sale, storing for sale, giving away, or furnishing of the same, within their respective counties; and to provide for penalties and rights of action in case of its violation."

It is claimed that the act embraces two distinct objects in its title, viz.:

"1. To prohibit the manufacture, sale, etc., of liquors in the several counties of the State.

"2. To authorize and empower the board of supervisors of the several counties to prohibit such manufacture and sale."

In order to ascertain whether the title of the act embraces more than one object, the whole act must be examined and considered; and as the whole act seems to be involved in the objections raised to its validity, for convenience of reference, it is given below:

"SECTION 1. *The People of the State of Michigan enact,* That it shall be unlawful for any person, directly or indirectly, himself, or by his clerk, agent, or employé, to manufacture, sell, keep for sale, give away, or furnish any vinous, malt, brewed, fermented, spirituous, or intoxicating liquors, or any mixed liquor or beverage, any part of which is intoxicating, or to keep a saloon or any other place where any such liquors are manufactured, sold, stored for sale, given away, or furnished, in any county of this State, on and after the 1st day of May next following after the adoption by the board of supervisors of such county of a resolution prohibiting the same, as provided in section thirteen of this act, so long as such resolution remains unrepealed: *Provided, however,* That the provisions of this section shall not apply to druggists, or registered pharmacists, in selling any such liquors under and in compliance with the restrictions and requirements imposed upon them by the general laws of this State.

"SEC. 2. On and after the 1st day of May next following after the adoption by the board of supervisors of any county of a resolution prohibiting the manufacture of liquors and the liquor traffic, as hereinafter provided in section thirteen of this act, the provisions of the general laws of this State for the taxation and regulation of the business of manufacturing, selling, keeping for sale, furnishing, giving away, or delivering spirituous and intoxicating liquors, and malt, brewed, or fermented and vinous liquors, shall be, and the

same are hereby, declared suspended and superseded so far as relates to the territory and municipalities within the limits of any such county: *Provided, however,* That all sales of liquors by druggists or registered pharmacists in such counties shall be under the restrictions and requirements imposed upon them by the general laws of this State.

"SEC. 3. In order to ascertain the will of the qualified electors of each organized county in regard to such prohibition, it shall be the duty of the county clerk of the counties of this State severally, upon written application and petition filed with him and addressed to the board of supervisors of the county, signed by not less than one-fourth of all the qualified electors thereof, as shown by the poll-lists or returns and canvass of the last preceding general election for State officers held in the several townships, wards, or election districts in such county, praying that an election be held in and for such county to ascertain whether or not the manufacture of liquors and the liquor traffic should be prohibited within the limits of such county, to call a special meeting of such board of supervisors in the manner hereinafter set forth.

"SEC. 4. To enable the county clerk to ascertain that the petitioners thus praying for such an election are qualified electors of such county, and that they constitute at least one-fourth of all the electors of such county, as shown by the poll-lists or the returns and canvass of the last preceding general election, it is hereby required that the signatures of all the petitioners residing in any one and the same township, ward, or election district shall be attached to one petition or list, separate from those of any other township, ward, or election district. Every such petition shall be accompanied by a transcript of the poll-list, if it can be procured, of the last preceding general election held in such township, ward, or election district, certified as correct by the township, city, or county clerk, as the case may require, and also an affidavit or affidavits by one or more resident electors of such township, ward, or election district, stating therein that he or they are personally acquainted with said petitioners, and know that they reside within such township, ward, or election district, and that the signatures are the genuine signatures of the persons signing the petition and of the persons whose names severally appear upon such transcript of the poll-list; or, if such transcript shall not have been procured, then that the persons whose names are attached to said petition are, to the best of his knowledge and belief, qualified electors in such township, ward, or election district: *Provided, however,* That if, for any reason, a certified transcript of any poll-list shall not have been procured, or if such transcript shall be defective, it shall be sufficient if the whole number of all the petitioners is equal to one-fourth of the number of all the qualified electors of such

county, as shown by the returns or county canvass of the last preceding general election.

"SEC. 5. When such petitions shall have been presented to the county clerk, he shall file the same in his office, and when it shall appear upon the face thereof, and by the transcripts of the poll-lists, or by reference to the returns and canvass of the last general election, that such election has been prayed for by not less than one-fourth of all the qualified electors of the entire county, shown as aforesaid, he shall, within five days after the presentation thereof, issue his call for a special meeting of the board of supervisors, setting forth in such call the fact that such petitions have been received and filed with him, and fixing therein the date and hour for such meeting of the board, which date shall not be less than ten nor more than twenty days from the presentation and filing of such petitions, and also the place of such meeting, which shall be at the office of the county clerk, or at the court-house of the county. Such call, when issued, shall be entered in full in the journal of the proceedings of the board of supervisors. The county clerk shall immediately give notice in writing of such call to each of the members of said board, by causing a copy thereof to be delivered to such supervisors personally, or by leaving the same at the place of residence of such supervisor, at least ten days before the time fixed for such meeting. It shall be the duty of said board to meet at the time and place fixed in said notice, and any limitation fixed by law for the number of special sessions which may be held by a board of supervisors in any one year shall be exclusive of the sessions required to be held under this act.

"SEC. 6. At such meeting of the board of supervisors it shall be the duty of the county clerk to lay before them the petitions filed in his office praying for such election, and when, upon examination, it shall appear to [the] said board, upon the face of said petitions, and by the transcripts of the poll-lists, or by reference to the returns and canvass of the last general election, that such election has been prayed for by the requisite number of electors, as hereinbefore provided, they shall, by resolution, determine and declare to that effect, and such determination shall be final as to the sufficiency of the petitions and the requisite number of electors signing the same, and they shall thereupon issue an order directing that such election be held in and for such county. Said order shall recite: The filing and examining of the petitions; the resolution determining and declaring that said petitions represent not less than one-fourth of all the qualified electors of the county as shown by the transcripts of the poll-lists or the returns and canvass of the last preceding general election for State officers held in such county; the ordering and calling of an election in the several townships, wards, or election districts in the county, to ascertain

whether or not it is the will of the electors of the county that the manufacture of liquor and the liquor traffic should be prohibited within the limits of the county; and the day and date on which such election shall be held, which said day shall always be on a Monday, and which date shall be not less than forty nor more than sixty days from the date of such order, and not on the day of any other general election in the county. Such order shall be entered in full upon the journal of the proceedings of the board for that day, and the same shall be signed by the acting chairman and clerk of the board, before final adjournment. The county clerk shall, without delay, cause a copy of such order, duly certified by him, to be delivered to the township clerk of each township, and to one of the inspectors of election of each ward or election district of every city in the county, and he shall also, at the same time, cause such order to be published for three successive weeks in two newspapers published in the county, or in one newspaper, if there is only one published.

"SEC. 7. The township clerk or inspector of elections receiving such copy of such order shall give at least twenty days' notice of the time and place at which such election is to be held, which election in townships shall be held at the place of holding the last preceding township or general election, or at such other place or places as the township board shall designate, and in cities at such places as the common council shall designate. Such notice shall be given under his hand, and shall also embody the order of the board of supervisors, required by section six of this act. Copies of said notice shall be posted in six of the most public places in each township, ward, or election district in the county.

"SEC. 8. It shall be the duty of the county clerk to cause to be printed a sufficient number of blank election notices for the use of his county, and also a sufficient number of ballots to supply the electors of every township, ward, and election district in such county, and he shall, at least five days before any such election, transmit said ballots in proportionate lots to the township clerk of each township, and to one of the inspectors of election in each ward or election district of the cities in the county, whose duty it shall be to cause a judicious distribution of the same at the polls. Such ballots shall be printed in two forms, one of which shall contain the words: "Should the manufacture of liquors and the liquor traffic be prohibited within the county,—Yes." The other form shall be: "Should the manufacture of liquors and the liquor traffic be prohibited within the county,—No." Every ballot on which the word "Yes" is found shall be counted in the affirmative of the proposition. Every ballot on which the word "No" is found shall be counted in the negative of the proposition: *Provided*,

82 MICH.—26.

*however*, That any elector may vote upon such proposition with either a written or printed ballot.

" SEC. 9. Upon the day and date so designated in the call of the board of supervisors, an election shall be held in every township, ward, and election district in such county upon the proposition set forth and designated in such call. All persons entitled under the laws of this State to vote for Governor shall be deemed qualified to vote at such election. The registration of the qualified electors, the hour for opening and closing the polls, the manner of voting, and of holding and conducting an election under this act, and the powers and duties of boards of registration, of inspectors of election, township boards, and common councils, and all other officers, with reference to such election, shall be the same in every respect as in the case of a general election; and the laws of this State pertaining to the registration and qualification of electors, the disposition of the ballots, the canvass of the votes, and declaring the result thereof at general elections shall be observed and enforced at every election held under this act, so far as the same shall be applicable: *Provided, however*, That such proposition having been once submitted and decided either way by a majority of the votes of the qualified electors in any county in this State, voting thereon, the same shall not be again submitted in such county within a period of two years next thereafter, but may, at any time after the expiration of such period, upon a like petition and action, be again submitted, and so on, at the expiration of not less than two years after every such election.

" SEC. 10. At the close of the canvass, and after declaring the result of the vote, and without recess or adjournment, the inspectors shall draw up a statement of such result, and cause a duplicate thereof to be made, which statement and duplicate, together with the poll-lists, shall be certified by the inspectors to be correct, and shall be subscribed with their names. Such statement shall set forth in words at length the whole number of votes given upon the proposition submitted, and the whole number of votes cast "Yes" and the whole number of votes cast "No" thereon, and the majority for or against ·the proposition. Said statements, together with the poll-lists, shall forthwith be filed by the inspectors with the township or city clerk, one copy of each of which shall be filed and preserved in his office, and the other transmitted by him to the county clerk of the county within five days after such vote shall be taken, and there remain on file.

" SEC. 11. The board of supervisors of such county shall meet on the first Monday after such election to canvass the vote of the county, and shall ascertain, determine, and declare the result thereof. At such meeting the county clerk shall lay before the

board the statements of the votes of the several townships, wards, and election districts filed with him, as above provided. Such canvass, determination, and declaration of the result, together with a tabular statement of all the votes cast, shall be entered in full upon the journal of their proceedings for that day, and the same shall be signed by the acting chairman and the clerk of the board: *Provided*, That if any such statement or poll-list shall not be made, certified, or returned, as provided in section ten of this act, the board of supervisors may, at such meeting, send for the same, and require the same to be certified and made, the same, and with like power and authority, as the board of county canvassers at general elections.

"SEC. 12. In case any township, ward, or election district shall *refuse or neglect to hold an election at the time or in the manner* required under this act, or in case the statement of the votes of any one or more townships, wards, or election districts shall be unlawfully withheld from such board of supervisors, and it shall appear to said board of supervisors upon inquiry that such refusal or neglect to hold an election, or that such withholding of any statement of the votes, is done for the purpose of preventing a full expression of the will of the electors of such county upon the proposition so submitted, it shall nevertheless be lawful for such board to proceed with the canvass of the votes and declare the result thereof, the same as though no such refusal or neglect to hold such election or the withholding of any such statement had taken place; and such refusal, neglect, or withholding shall in nowise affect or invalidate the result of the election as determined and declared by such board.

"SEC. 13. When the result of the county canvass shall show that a majority of all the legal votes cast is in the affirmative of the proposition to prohibit within such county the manufacture of liquors and the liquor traffic, and when the board of supervisors shall have so determined and declared, it shall be lawful for such board of supervisors in any county, having so voted in the affirmative of the proposition to so prohibit, as aforesaid, and such board of supervisors is hereby authorized and empowered, to order, by a majority vote of all the members elect, the prohibition within the limits of such county of the manufacture, sale, keeping for sale, giving away, or furnishing of any vinous, malt, brewed, fermented, spirituous, or intoxicating liquors, or any mixed liquor or beverage, any part of which is intoxicating, and to prohibit the keeping of a saloon, or any other place where such liquors are manufactured, sold, stored for sale, given away, or furnished, by resolution, adopted at that same meeting of the board, or at a meeting to which the same may be adjourned, not more than ten days after such canvass, and not less than forty days before the first day of

May next ensuing. Such resolution shall be spread in full upon the journal of their proceedings, and shall set forth in a preamble the fact that an election submitting the proposition of prohibition, as aforesaid, was duly called and held in the county; that sufficient returns and statements of the votes cast in the several townships, wards, and election districts in the county have been made, as required by this act; that such statements have been canvassed by them, and the result thereof ascertained; that such result was in the affirmative of such proposition, giving the majority, and that the same has been so determined and declared by them. Such resolution of prohibition shall take full effect within such county on the first day of May next following its adoption, and shall not be subject to repeal by the board of supervisors within two years next thereafter, after the expiration of which period the board may again, by a majority vote of all the members elect, act as in the first instance, and repeal such resolution of prohibition; but not unless a majority of the electors of the county, voting on such proposition, at a subsequent election duly called and held in accordance with the provisions of this act, shall have declared against the prohibition of the manufacture of liquors and of the traffic therein; and upon the repeal of such resolution of prohibition by the board of supervisors, all former suspension and superseding of the general laws of the State relative to the taxation and regulation of the manufacture and sale of intoxicating liquors, as provided in section . two of this act, shall cease within such county: *Provided, however*, That all actions which may have been brought, and all rights of actions which may have accrued, before such repeal, shall remain and continue to exist as fully as if no such repeal had taken place.

"SEC. 14. It shall be the duty of the clerk of such board of supervisors to publish without delay, for at least four weeks, in a newspaper published and circulated in such county, to be designated by the board, a copy of the preamble and resolution adopted by the board, as provided by section thirteen of this act: *Provided*, That if such proposition shall have been decided in the negative, such publication shall not be required. The said clerk shall also, without delay, forward to the Secretary of State a certified transcript of such resolution, and of so much of the journal of the proceedings of the board of supervisors as pertains to such election, including the tabular statement of votes, together with a copy of the affidavit of publication of the notice of the adoption of the resolution. Such · original affidavit of publication shall be filed with the clerk of the board of supervisors, and he shall spread the same on the records of the board, following the record of the adoption of the resolution of prohibition, and the said clerk shall state next on the record the date when said notice and affidavit of publication was

entered for record, and shall then sign the record officially. The record of such resolution of prohibition, and of the publication of notice, and all duly-certified copies thereof, shall be the evidence of the facts therein stated so far as relates to the territory and municipalities within the limits of said county; and the regularity of any proceedings prior to the adoption of such resolution by the board of supervisors shall not be open to question on the examination or trial of any person for a violation of any of the provisions of section one of this act.

"SEC. 15. The prohibitory provisions of this act shall take effect and have full force within such county of this State on and after the 1st day of May immediately following the adoption by the board of supervisors of such county of the resolution ordering such prohibition, and upon publication of the notice of the adoption of such resolution: *Provided, however,* That nothing in this act shall be so construed as to prohibit the sale of wine for sacramental purposes, nor shall anything herein contained prohibit druggists or registered pharmacists from selling or furnishing pure alcohol for medicinal, art, scientific, and mechanical purposes.

"SEC. 16. Any person who himself, or by his clerk, agent, or employé shall violate any of the provisions of section one of this act shall, for the first offense, be deemed guilty of a misdemeanor, and, upon conviction thereof, be sentenced to pay a fine of not less than fifty nor more than two hundred dollars, and the costs of his prosecution, or to imprisonment in the county jail not less than twenty days nor more than six months, in the discretion of the court. For the second, and every subsequent, offense, so committed, whether in the same or any other county in this State where the provisions of section one and two of this act are operative, he shall, upon conviction thereof, in any court of competent jurisdiction, be sentenced to pay a fine of not less than one hundred dollars nor more than five hundred dollars, and to imprisonment in the State House of Correction and Reformatory at Ionia for a term of not less than six months nor more than two years, in the discretion of the court.

"SEC. 17. Upon the trial for any violation of the provisions of section one of this act it shall be competent to introduce the record, or a certified transcript thereof, of the preamble and resolution of the board of supervisors of such county, required by section thirteen of this act, and such record and transcript shall be the evidence that the provisions of this act are in full force within such county, and that the manufacture, sale, keeping for sale, giving away, or furnishing of any of the liquors herein designated, and the keeping of a saloon, or any other place for the manufacture, sale, or storing for sale or giving away or furnishing of the same, is prohibited and unlawful, and shall also be the evidence of the

suspension and superseding of the provisions of the general laws of this State for the taxation and regulation of the business of manufacturing, selling, keeping or offering for sale, giving away or furnishing of any of the liquors hereinbefore designated, so far as relates to the territory and municipalities within the limits of such county, so long as such resolution remains unrepealed.

"SEC. 18. Proof of a single sale of any one or more of the liquors or beverages mentioned in this act, or of the posting in any distillery, brewery, saloon, or other place of business of a United States revenue receipt permitting the manufacture or sale of any one or more of the liquors or beverages mentioned in this act, at the time and place alleged in the complaint or information, shall be presumptive evidence of such manufacture, sale, keeping for sale, giving away, or furnishing of any such liquors, or of keeping a place where such liquors are manufactured, sold, kept for sale, given away, or furnished, as the case may be.

"SEC. 19. In every county in this State where the provisions of sections one and two of this act are operative, every wife, child, parent, guardian, husband, or other person who shall be injured in person or property or means of support, or otherwise, by any intoxicated person, or by reason of the selling, giving, or furnishing to any person any vinous, malt, brewed, fermented, spirituous, or intoxicating liquors in violation of section one of this act, shall have a right of action in his or her own name against any person or persons who shall, by selling or giving any such liquors, have caused or contributed to the intoxication of such person or persons, or who have caused or contributed to such injury; and in an action provided for in this section the plaintiff shall have a right to recover actual and exemplary damages. In case of the death of either party, the action and right of action given by this section shall survive to and against his or her executor or administrator. And in every action by any wife, husband, parent, or child, general reputation of the relation of husband and wife, parent and child, shall be *prima facie* evidence of such relation, and the amount so recovered by every wife or child shall be his or her sole and separate property. Such damages, together with costs of suit, shall be recoverable in an action of trespass on the case before any court of competent jurisdiction. And in any case where parents shall be entitled to such damages either the father or the mother may sue alone therefor. But recovery by one of said parties shall be a bar to a suit brought by the other.

"SEC. 20. Any township, city, or county clerk, member of the board of registration, inspector of election, supervisor, or other officer, who shall refuse or willfully evade or neglect to perform any of the duties imposed upon him by the provisions of this act, shall, upon conviction thereof, be adjudged guilty of a misdemeanor, and

shall be punished by a fine not exceeding two hundred dollars, or by imprisonment in the county jail not exceeding six months, or both, in the discretion of the court.

" SEC. 21. The several officers required to render any service by reason of this act shall receive the same compensation allowed by law for other like services and from the same sources, and the fees for publishing the required notices shall be allowed by the board of supervisors and paid by the county.

"SEC. 22. It shall be the duty of any township, city, or county clerk, on the demand of any qualified elector in the county, and on payment or tender to him of the fee berein prescribed, to make out within a reasonable time and at his office deliver to such elector a true and certified copy of the poll-list or poll-lists, of the last general election held in his township, city, or county, on file in his office, for which he shall be entitled to receive at the rate of fifty cents for every one hundred names.

" SEC. 23. The Secretary of State is hereby required to prepare all suitable blank statements and poll-books to be used at elections held under this act, and to furnish the same in sufficient numbers, upon application, to each county clerk, whenever they shall be needed in the county. And it shall be the duty of such county clerk, whenever such election is to be held in the county, to make requisition upon the Secretary of State for a sufficient number of such blank statements and poll-books, and at least ten days before such election distribute and deliver the same to the several township and city clerks in the county.

" SEC. 24. It shall be the duty of the Attorney General to draft, or cause the same to be done, under his supervision, a complete set of all the blank forms that may be used or required under the provisions of this act; and it shall be the duty of the Secretary of State to publish and distribute a sufficient number of copies of this act in pamphlet form, with an appendix containing a copy of all such blank forms.

" Approved June 29, 1889."

Viewing this act as a whole, we find it to be a law the object of which is to prohibit the manufacture, sale, etc., of intoxicating liquors at the option of the local authorities of any county in this State. In reaching that object, the Legislature saw fit to provide for delegating to the board of supervisors the authority to legislate or to make a certain order upon the subject. Prohibition is the end provided for, and the board of supervisors are constituted the means to attain that end. The object is single, and

all the instrumentalities are designed to attain that object. I can see no constitutional objection to the title of the act.

In discussing the questions raised, I shall follow the arrangement contained in the brief of counsel for relator, and the next question discussed by them is under the head of "Irrepealable Legislation." Attention is called to section 13 of the act, wherein it is provided that, after the resolution of prohibition takes effect, it shall not be subject to repeal by the board of supervisors within two years next thereafter. Counsel claim that the Legislature has here undertaken to delegate an authority which it does not have itself. If the contention of counsel is correct, the defect pointed out would not render the whole act unconstitutional and void. The other parts, with these irrepealable clauses stricken out, would be capable of enforcement, and accomplish the object of the statute.

While it is true that a person or body intrusted with authority, and with the right to delegate the exercise of such authority to another person or body, cannot delegate a greater authority than such person or body possesses, yet it is equally true that in delegating such authority as he has he may place such restrictions and conditions upon the exercise of such delegated authority as he may choose; and he may also prescribe the manner and circumstance of its exercise. Therefore, when the Constitution granted to the Legislature the right to " confer upon organized townships, incorporated cities and villages, and upon the board of supervisors of the several counties, such powers of a local, legislative, and administrative character as they may deem proper" (Article 4, § 38), the Legislature was invested with authority to prescribe how, when, in what manner, and upon what conditions the power thus delegated might be exercised; and I think it not an unreasonable restraint upon the exercise of this

legislative power by the board of supervisors that they should not undo their action in two years. The power of legislating by the board of supervisors is parceled out to them by the Legislature. It is a delegation of power, and none can be exercised by them except such as is delegated, or is necessary to carry out the powers delegated. This is all familiar doctrine, and needs no elucidation by argument or citation of authorities. The Legislature may repeal the law at any time as a city charter may be repealed, or its provisions altered or amended.

Counsel's next point is made under the head of "Judicial Power." They claim that section 12 confers judicial powers upon the board of supervisors, and say:

"But the assaults which this act makes upon the constitutional safeguards do not end here. Section 12, Laws 1889, p. 291, makes the board the judges of when the votes of any election precinct are illegally withheld, and, when such shall appear to be the case 'upon inquiry,' they are authorized to ignore the existence of such election district, and go on with the canvass, disregarding entirely its vote. The last clause of section 14, p. 293, makes their action final, and not open to question by the courts. The board of supervisors is thus constituted a tribunal to determine 'upon inquiry,' and without making any record of their proceedings, that enough election precincts shall be thrown out to change the result of the election. Their order is to be final. A penal law is hinged upon it, and their proceedings 'shall not be open to question' on the trial of any person charged under it with crime. Not only are the rights of the voting districts ignored, and express power given to the board to declare an illegal election a valid one, but persons charged with crime are shut out from contesting the *corpus delicti*. This is not a mere vesting of *quasi* judicial power in preliminary proceedings such as has often been upheld by the courts as not violating constitutional provisions vesting judicial power in courts."

I do not see that the section vests judicial power in the board of supervisors. The preceding section (11) makes them a canvassing board for the purpose of tabu-

lating the votes, and ascertaining and declaring the result. Section 12 merely authorizes them to proceed, in the absence of a return from any township, ward, or election district, where they are satisfied that the failure to vote or make a return is done for the purpose of preventing a full expression of the will of the electors upon the proposition submitted, to complete the canvass of the votes actually returned. There is no judicial action or determination, but their action under this section is wholly administrative. It is not every exercise of discretion in administrative affairs that makes such action judicial. Wherever a trust or confidence involving the exercise of discretion is reposed, it must be exercised, but because it involves investigation, inquiry, and the exercise of discretion and choice, it is not necessarily the exercise of judicial powers. The law does not authorize them to reject any return made to them. On the contrary, they are to tabulate all the returns made. They are not authorized to compel a return. The vote itself is but the expression of the will of the voters, and is intended simply as a means of informing the board of the sentiments of the people upon the subject. And as the members of the board must act upon their own judgments as to the expediency of adopting the resolution, it is proper that they should inquire why any town had not voted, or why the return from any town has been withheld. Such inquiry might have a bearing upon the expediency of adopting the resolution, but it determines no rights, and excludes no returns properly made.

The next point made by counsel is under the head of "Suspension of the General Laws of the State." Counsel claim that section 2 of Act No. 207 provides for a suspension of the general laws of the State for a particular locality, not by judgment and decree of the Legislature,

but, under the authority contained in section 13, by the board of supervisors. And they argue,—

"That cannot be a law to take effect upon the judgment and discretion of the Legislature which the people and the board of supervisors can alternately suspend and reinstate every two years at their pleasure;" that "while the Legislature may suspend the general laws of the State, the suspension must be general, and cannot be made in individual cases, or for particular localities;" that "it is for the Legislature alone, which can order such suspension. The power to suspend a general law cannot be delegated. Here the power is given as to no particular law, but as to any general law of the State that might happen to be passed in the future regulating the sale of liquor."

It thus appears that the objections to the law are twofold:

1. It delegates the power to the majority of the qualified voters of a county and to the board of supervisors to suspend the general laws of the State.
2. It does not delegate the authority to the board of supervisors to prohibit, but to them and the voters jointly.

The first objection raises the question whether the Legislature can suspend the general laws as to any particular locality while leaving them in force in the rest of the State. It is laid down in general language by Mr. Cooley, in his work on Constitutional Limitations, p. 391, that—

"The legislature may suspend the operation of the general laws of the state, but when it does so the suspension must be general, and cannot be made for individual cases, or for particular localities."

This is the assertion of a principle of universal recognition as applied to individual cases, but it is not generally recognized as applied to particular localities. On the contrary,—and especially is it true where the constitution authorizes a delegation of legislative power for local purposes,—the legislature may suspend, or authorize legislation which will necessarily operate to suspend, the general law in particular localities. The principle is a recognition

of the right of local self-government. One locality may feel the need of different local regulations from another. The wants of a majority of its electors are respected in granting to the local municipality the power to enact such laws relating to their internal affairs as the feelings and wishes of the majority demand.

The general law for the incorporation of villages, and that for the incorporation of cities, as well as every special charter granted, contain provisions authorizing the legislative bodies of such municipalities to legislate upon subjects covered by the general laws of the State. See chapter 81, How. Stat., being Act No. 62, Laws of 1875. Chapter 7 of that act defines the powers of the council, and the first seven subdivisions of section 1 of that chapter cover subjects which are provided for by general laws, and the council are authorized to pass such ordinances in relation thereto as they think proper. The seventh subdivision, as amended in 1887 (Act No. 290), gives the council authority to pass ordinances "to suppress saloons for the sale of spirituous and intoxicating liquors." And when the council had acted and passed an ordinance prohibiting the sale of intoxicating liquors in the corporate limits, this Court refused a *mandamus* to compel the council to approve a liquor bond of a person who desired to engage in the business under the general law.[1] See, also, general law for the incorporation of cities, How. Stat. pp. 659–662. This question was in a measure involved in the case of *People v. Hanrahan*, 75 Mich. 611 (42 N. W. Rep. 1124), in which the power of the Legislature to grant authority to local municipalities to legislate on subjects covered by the general laws was upheld, and the conclusion reached that the local act might be exclusive of the general law, and operate to

---

[1] See *Post v. Sparta*, 58 Mich. 212.

repeal it by implication, as when its provisions are repugnant to, or inconsistent with, the general law.[1]

By Act No. 31, Laws of 1887, it was enacted that it should not be lawful to establish or maintain a saloon, or other place of entertainment where intoxicating liquors were sold or kept for sale, within one mile of the Soldiers' Home, an institution belonging to the State, located near the city of Grand Rapids. The act also prohibited the sale of such liquors to any soldier, sailor, or marine who was an inmate or employé of such Home within the distance stated. This act was held constitutional and valid by this Court in *Whitney v. Township Board,* 71 Mich. 234 (39 N. W. Rep. 40). The Justice who wrote the opinion based it upon the ground that—

"The liquor traffic has ever been considered a business fraught with so much danger and disturbance to the public welfare as to be peculiarly under police surveillance and control. * * * The State has a right to guard and protect its poor and its unfortunates within and about the State institutions in which they are cared for and maintained, and has a right, under the police power, to make such reasonable regulations as are necessary to that end."

Other instances of such kind of legislation are given in the opinion. There is no written provision in the Constitution forbidding the Legislature from enacting laws for particular localities, or suspending the general laws in certain localities. The prohibition, if it exists in this respect, must therefore come from some great underlying principle of right and justice inherent in the nature and spirit of the social compact, whose universal application and binding authority command the assent of every freeman.

The right of the judiciary to declare statutes unconstitutional as violating some great underlying principle of

---

[1] See *People v. Mallette,* 79 Mich. 600.

natural right or justice, when such statute violates no part of the written constitution, is not universally admitted. It does not arise in this case, and need not be discussed, nor decided. No such underlying principle as that the Legislature shall not enact laws for a particular locality, different from those applicable to other portions of the State, or, which is the same thing, shall not suspend the operation of general laws as to any particular locality, has ever been recognized in this State. On the contrary, there is an unbroken record of instances where such legislation has been had without question, and such laws have been upheld by the decisions of this Court. In this State it is not a question of legislative power, but of expediency, and the exercise of legislative discretion. Judge Cooley, in speaking of the constitutionality of local option laws, says:

"They relate to subjects which, like the retailing of intoxicating drinks, or the running at large of cattle in the highways, may be differently regarded in different localities, and they are sustained on what seems to us the impregnable ground, that the subject, though not embraced within the ordinary power of the municipalities to make by-laws and ordinances, is nevertheless within the class of police regulations, in respect to which it is proper that the local judgment should control." Cooley, Const. Lim. 125.

The objection that the authority is delegated to the board of supervisors jointly with the majority of the voters is not borne out by the statute. By section 13 of the act, authority is given to the board of supervisors, if the county canvass shows that a majority of all the legal votes cast is in the affirmative, to order by a majority vote of all the members elect the prohibition within the county of the manufacture and sale of intoxicating liquors. The vote is not compulsory upon the supervisors. They may make the order or not, as they choose.

The law, very wisely, in my judgment, provided for ascertaining the will of the qualified electors of the county upon the subject; for experience has demonstrated that a prohibitory law cannot be enforced unless the law itself has the moral support of the majority of the electors. If public sentiment is not in favor of such law, it ought not to be forced upon the public. The statute provided for ascertaining the sense of the community by vote of the legal electors. That is all their vote expresses, and there it ends. If the people prefer taxation to prohibition, then the general law continues in force, and the traffic is regulated.

The Legislature, in conferring upon the board the authority to pass such order, had the right to prescribe the conditions under which it should be exercised; and this condition is that the majority of the legal voters vote in favor of the proposition. There is no constitutional objection to this. The voters do not make the law. The law was enacted by the Legislature, and provided that it should take effect on and after the 1st day of May immediately following the adoption by the board of supervisors of such county of the resolution ordering such prohibition, and upon the publication of the notice of the adoption of such resolution. Section 15. Numerous authorities might be cited to show that it is legal and competent for the Legislature to provide that a law shall go into effect upon the happening of a contingency, some of which are cited in the brief of the Attorney General. The proposition is too clear to need the citation of authorities. It makes no difference with the constitutionality of the law whether one call the action of the board of supervisors in passing the order an exercise of legislative power, as the counsel for relator contend it is, or whether it is called an exercise of administrative power, as contended for by the Attorney General. In either case, the

action was authorized by the authority of the Legislature, conferred under the provision of the Constitution sanctioning it. When this action is taken by the board, then it is the law that prohibits, and not the board of supervisors. Sections 1, 2. The law prescribes the penalties for disobedience. The law provides remedies for its violation. This law was complete and binding the moment it was approved by the Governor, and filed in the office of the Secretary of State, and took effect throughout the State 90 days after the close of the Legislature. Action could then be taken under it for the purpose of local option. The validity of similar laws is supported by a large line of authorities, among which are the following: *Locke's Appeal,* 72 Penn. St. 491; *State v. Court of Common Pleas,* 36 N. J. Law, 72; *Paul v. Gloucester Co.,* 50 Id. 585 (15 Atl. Rep. 272); *Anderson v. Com.,* 13 Bush, 485; *State v. Noyes,* 30 N. H. 279; *State v. O'Neill,* 24 Wis. 149; *Ex parte Swann,* 96 Mo. 44 (9 S. W. Rep. 10); *Schulherr v. Bordeaux,* 64 Miss. 59; *State v. Pond,* 93 Mo. 606 (6 S. W. Rep. 469). See, also, the notes to *Com. v. Kimball,* 35 Amer. Dec. 337, and cases cited; *Town of Summerville v. Pressley,* 11 S. E. Rep. 545; *Hroneck v. People,* 24 N. E. Rep. 861.

I have noticed all the constitutional objections relied upon in the brief of counsel for relator. The objections stated in the petition for *mandamus* not noticed in the brief are considered waived.

I see nothing in the act which conflicts with the Constitution, and am of opinion that the writ should be denied.

CAHILL, LONG, and GRANT, JJ., concurred with CHAMPLIN, C. J.

MORSE, J., *(dissenting).* The title to the act under consideration is all right, and I find but one constitutional

objection to the law, which one to me is insuperable. Our system of State government under the Constitution is not a pure democracy, but a representative one. The making of laws has been fixed by the people themselves in the organic law, and they have delegated the power and confined it to the Legislature, except in so far as the Constitution authorizes that body to confer upon organized townships, incorporated cities and villages, and upon the board of supervisors of the several counties, such powers of a local, legislative, and administrative character as they may deem proper. Article 4, § 38.

The people, without the consent of the Legislature, could not meet at the different polling-places in the State and enact a law by ballot, nor can they do 'it with the consent of the Legislature. Nor can the Legislature pass a law and enact that it shall not take effect until the people vote in favor of it at the polls. It is argued that in the case last mentioned a majority of the people voting for the law is not passing the law; that the Legislature has already done so, and only calls upon the people to vote whether or not they will accept its conditions. It is claimed that the majority of the Missouri supreme court so held in *State v. Pond*, 93 Mo. 606 (6 S. W. Rep. 469). This argument is the merest sophistry, and an evasion of the Constitution. The people, it is argued, do not make the law; but it is admitted that it cannot become a law until the people vote to accept it. I have no appreciation of such an argument. It amounts to this, and this only: The Legislature says to the people,—

"Do you want this law or not? If you want it, you can have it; if you don't want it, you can't have it. Now meet at your polling-places and vote upon it, and make your choice."

If in such case the people do not, by an election, make

82 MICH.—27.

the act a law, or reject it, then I am obtuse.    This would be a convenient thing for a Legislature wishing to shirk responsibility,—to submit all their laws to the vote of the people,—for if they can submit one, they may submit all; but it is not the way provided by our Constitution for the enactment of laws.   Perhaps it would be a better system of government than the other, but it is not our system at present, and cannot be until our organic law is amended to that end.

This subject has been once before a matter of discussion in this Court, in the case of *People v. Collins*, 3 Mich. 343, in the consideration of the prohibitory liquor law of 1853.   In that act provision was made for its submission to the people of the State, not to decide whether it should become a law or not, but when it should take effect.   If a majority of the people voted "Yes," it was to go into operation and take effect December 1, 1853. If they voted "No," it was not to take effect until March 1, 1870.   Four of the Judges sustained the law,—GREEN, WHIPPLE, MARTIN, and JOHNSON.   Four were of the opinion that it was not constitutional.   GREEN, P. J., held that the power to enact laws was by the Constitution vested exclusively in the Legislature, and that the Legislature could not delegate it and exclude itself from its exercise.   He sustained the law entirely upon the ground that the submission to the people and their approval of the law did not enact the law, but simply fixed the happening of the event or contingency when the act, which was a law when it passed the Legislature, should take effect; and that thereby nothing was added to or taken away from the law itself by the people. MARTIN, J., put his decision nearly upon the same ground. No one of the Judges contended that, had the effect of the submission of the act been to determine whether it

should become a law or not, it would have been valid. It has always seemed to me that the argument of Judge DOUGLASS, in his opinion in *People v. Collins*, 3 Mich. 413–427, is unanswerable; that the power of enacting *general* laws cannot be delegated by the Legislature even to the people. I need say nothing further on this subject than that his views meet my own. The power of the Legislature, therefore, even in *People v. Collins*, to pass an act, and then to take the sense of the people, whether it shall become a law or not, was not admitted, nor has it ever been in this State.

The act under consideration provides that the board of supervisors shall, upon a certain showing, submit the question to the electors of any county whether or not the general laws of the State for the taxation and regulation of the liquor traffic shall be suspended, and a prohibitory law go into effect. If such electors, by a majority vote, express their will in favor of prohibition, then the supervisors may or may not suspend the tax law, and put in force the prohibitory law; but if a majority declare in favor of the tax law, the supervisors have no option, and the county cannot have prohibition because the people have so voted. This act is simply this, and nothing more: The Legislature passes two general laws entirely antagonistic and irreconcilable, two opposite principles and methods of dealing with the liquor question. Then it says to the board of supervisors of the several counties—

"You may, upon certain conditions, submit to the people of your county which law they will put in force and which they will suspend. If the people vote for taxation and regulation, they can have that, and nothing else. If they vote for prohibition, they may have it or not, as you see fit."

Therefore, if the people vote against prohibition, they make the law. This is certain, as the supervisors, who

are made by the Constitution the legislature of the county, are then powerless to act. Only in case the people vote for prohibition is their will of no avail unless affirmed by the supervisors. Why this advantage is given regulation over prohibition is not apparent, yet it does not in itself concern us. Is this kind of legislation constitutional? As before shown, it has always been conceded in this State that the making of general laws cannot be delegated, even to the people. The Constitution authorizes the Legislature to confer powers of a local, legislative, and administrative character upon the board of supervisors. That is as far as it can go. Can it authorize the board of supervisors to delegate a power to the people that it cannot delegate to them itself? The answer is obvious. The Legislature cannot authorize the people of the county to meet at their various polling-places, and vote, regardless of any action of the board of supervisors, to suspend any general law of this State relative to liquor, or anything else. The county, under our Constitution, is not governed by a mass-meeting, nor by a direct vote of its people at the polls. It is governed by a representative body,—the board of supervisors elected by the people,—and which may be changed entirely in its membership each year. But by this act it is different. The people govern the liquor question by their votes, regardless of the supervisors, if they want taxation instead of prohibition. The law-making power is directly in the people, unless they want prohibition. It is argued that this vote of the people is only advisory,—a sort of petition, as it were, to the supervisors, setting them in motion, upon which they can act or not, as they see fit. This is not so. If they petition for prohibition, the supervisors may give it or not; but if they petition for taxation, the supervisors must give them taxation, whether they wish to do so or not.

Nor is this all. When the supervisors once order pro-
hibition, it cannot be repealed by them for two years at
any rate, and they can never repeal it unless the people
vote so to repeal it; so the law of prohibition is made by
the people, and can only be repealed by the people. It
is true the Legislature may repeal the general law,—this
act, known as the "Local Option Act,"—but that repeal
must be general all over the State. But for a particular
county, the people rule virtually by mass-meeting, a pure
and simple democracy, and the legislature of the county
is powerless to move. This delegation of power to the
people is attempted to be justified on the ground that it
is in accordance with the principles of local self-govern-
ment. But it is a local self-government which the people
took pains to deny themselves in their written Constitu-
tion, and is not in harmony with the representative idea,
which is the basis of a republican government. There is
no one, I trust, more strongly impressed with the benefits
and blessings of local self-government than the writer of
this opinion; but it is the local self-government of the
Constitution, as expressed therein. The trend of the
majority opinion in this case is at war with local self-
government, as I understand it. It is there asserted that,
in reference to the liquor question, which is one of the
subjects to be governed by the general police power of
the State, the Legislature would have the right to pass
laws not general, but special, applying to certain locali-
ties, and in that respect to ignore the county, municipal,
and township governments. At least I so understand the
opinion, and the case of *Whitney v. Township Board,* 71
Mich. 234 (39 N. W. Rep. 40), is cited in favor of the
proposition. It was expressly stated in that case by the
writer, in the majority opinion, that the Legislature
could not, in his opinion, without good reason, prohibit
the sale and manufacture of liquor in one township or

county, or any specified number of towns or counties, and legalize the traffic in the rest of the State; that the Legislature could not pass a law allowing liquor to be sold in Detroit, and not elsewhere.

"Such legislation is contrary to the spirit of our State government, and would confer special and local privileges against right and reason, and in defiance of the principles upon which our free institutions are based." 71 Mich. 238.

And in this connection I refer to the opinion of our late lamented associate, Mr. Justice CAMPBELL, found on pages 245–249, 71 Mich., and say that I agree with him in that opinion, except in so far as it applies to the public institutions of this State, and to the Soldiers' Home, which was under consideration in that case. To permit the Legislature to say that in Ionia county the selling of liquor shall be a crime, and that in the adjoining county of Kent it shall be lawful, without reference or regard to any action of the board of supervisors of either county, thus arbitrarily determining for itself how the liquor traffic shall be regulated or dealt with in each locality, would be destructive of local self-government, and place in the discretion of the Legislature the whole power of governing localities, each as it saw fit, in reference to the sale of liquor. And if this power belongs to it as to the sale of liquors, why not to every other business that may be said to come at all under the supervision of the police power? And why not extend it further, and authorize the Legislature in all cases to judge upon what particular subjects the people of each county, township, and municipality are entitled to govern themselves through their regularly constituted constitutional agents and officers? Why not let the legislative will be expressed by local and special, rather than by general, laws? The Constitution does not expressly pro-

hibit this in so many words, but, as was well said by Justice
CAMPBELL,—

"Equality before the law is one of the fundamental prin-
ciples of representative government. Our Constitution,
in recognizing counties and townships and other districts,
with their inhabitants, cannot contemplate the right any-
where to classify them, or to place them singly under
different conditions." *Whitney v. Township Board,* 71
Mich. 246.

See, also, *People v. Hurlbut,* 24 Mich. 97–112 (opinion,
COOLEY, J.), and *Attorney General v. Common Council,*
58 Id. 213, 216 (24 N. W. Rep. 887), where the right of
the people to govern themselves through their own offi-
cers, as to their local concerns, is asserted under the Con-
stitution, although such instrument did not expressly
prohibit the Legislature from taking away the particular
rights involved in those cases. I am not now questioning
the right of the Legislature to confer upon townships,
cities, and counties the right to regulate or prohibit the
sale of liquors as they see fit; but this must be authorized,
in my opinion, by a general law, and when done must be
done by the supervisors of the county or common council
of the city, and not by a direct vote of the people. This
is the local self-government intended to be preserved by
our Constitution. And I do not believe that the Legis-
lature has any more right to say arbitrarily that selling
liquor shall be lawful in Wayne county, and unlawful in
some other county, than they have the right to pass a
special act suspending the operation in one county of any
general law making any act a misdemeanor in the State,
while in the other counties it still remains in force, or to
enact that horse-stealing shall be a felony, punished with
five years in prison in one county, and with ten years in
another. See *People v. Police Justice,* 7 Mich. (opinion
of CAMPBELL, J.), at page 465.

For the reason that the adoption of local option—or, in other words, the choice between prohibition and regulation or taxation of the liquor traffic—is left to the people, and not to the board of supervisors, who, under the Constitution, are the sole representatives of the people in such matters, and because such board can no more abrogate their functions and delegate their powers direct to the people in mass than can the Legislature so dele_gate its power to make laws under the same instrument, I must dissent from the conclusion of my brethren in this case. It is true, this delegation of power has been sustained in other states, but by divided courts, and the dissent has ever been most vigorous. See *Locke's Appeal*, 72 Penn. St. 491; *State v. Pond*, 93 Mo. 606 (6 S. W. Rep. 469); *Paul v. Gloucester Co.*, 50 N. J. Law, 593 (15 Atl. Rep. 272); *Fell v. State*, 42 Md. 71. In other cases laws have been held invalid ·because of such attempted delegation, the rule being laid down that a statute to take effect upon a subsequent event must, when it comes from the hands of the legislature, be a law *in præsenti*, to take effect *in futuro*, not one which is not to take effect unless the people vote to accept it. *Ex parte Wall*, 48 Cal. 279; *State v. Weir*, 33 Iowa, 134; *Barto v. Himrod*, 8 N. Y. 483.

I do not understand the case of *People v. Hanrahan*, 75 Mich. 611 (42 N. W. Rep. 1124), to announce or sustain the doctrine that the Legislature may arbitrarily and at will make an act a felony in one place in the State, and no crime at all in another. The laws upon the subject of fishing are not such laws. The Legislature may prohibit with penalties fishing in one stream, and not in another in the State; but it cannot be said that fishing in Grand river is the same act as fishing in Lake Huron. It is not the act of fishing that is prohibited, but the

fishing in certain public waters over which the State has control. If the *Hanrahan Case* means to establish the proposition that the Legislature may enact that knocking a man down and beating him, without any provocation or justification, may be assault and battery in one county, and no crime at all in another, or that the killing of a man under the same given circumstances may be murder in one county, manslaughter in another, and no crime at all in a third, I certainly agreed to such case under a very great misapprehension. No such point was involved in the case, and I cannot consent to any such interpretation of the law of the case. I do not understand the opinion in the *Hanrahan Case* to be that the State law, making the keeping of a house of ill fame a felony, with its added penalties, was inoperative in, and did not apply to, the city of Detroit. On the contrary, it holds that both the local ordinance and the State law are in force, and that prosecutions may be enforced under either, but that a person cannot be prosecuted and punished under both for the same identical act. One is a police regulation of the city, and the other a State law; but keeping a house of ill fame is no less a crime in Detroit to-day than it is in any other part of the State. I think the writ should issue.