(Lucas County Court of Common Pleas.)

JAMES STEVENSON v. SAMUEL A. HUNTER, Treasurer.

1. In an action to recover back money paid to the county treasurer as an assessment upon the business of trafficking in intoxicating liquors under the "Dow Law," the tax duplicate is prima facie evidence of every fact which is necessary to authorize the assessment, including the fact that the plaintiff was engaged in the business of trafficking in intoxicating liquors.
2. An assessment can be lawfully made under the "Dow Law" upon the business of trafficking in intoxicating liquors in a township which has voted against the sale of intoxicating liquors under the "Township Local Option Act" of March 3, 1888.

(April Term, 1892.)

---

PUGSLEY, J.

This is an action of replevin that was tried to the court, a jury being waived. The undisputed facts are as follows: On the 5th day of May, 1888, a special election was held in Providence township, in this county, under the provisions of the act passed March 3, 1888, commonly known as the "Township Local Option Act". A majority of the votes cast at said election were against the sale of intoxicating liquors, whereby it became unlawful for any person within that township to sell any intoxicating liquors to be used as a beverage, or to keep a place where such liquors are sold. On the 1st of October, 1891, and before any other election under the act was held in Providence township, the auditor of the county received information that the plaintiff, James Stevenson, was engaged in such township in the business of trafficking in intoxicating liquors, and thereupon the auditor entered upon the duplicate the assessment against such business proivded for by the act of May 14, 1886, known as the "Dow Law." The plaintiff was charged on the duplicate with having begun the business upon the 25th day of May, or the fourth Monday of May, 1891,

and the amount of the assessment was the full sum of $250. A few days thereafter, and on or about the 6th of October, the defendant, Samuel A. Hunter, who is the treasurer of the county, proceeded to collect the assessment, and was about to levy upon the goods and chattels of the plaintiff, under sec. 4 of the Dow Law, when this arrangement was made between them: The plaintiff signed a written statement in the form of an affidavit prepared by the auditor, reciting that from the 25th day of May, continuously to the 1st day of October, 1891, he was engaged in the business of trafficking in intoxicating liquors, and that on the 1st of October he discontinued such business; and thereupon there was abated from the assessment the ratable proportion for the unexpired part of the year after October 1, leaving a balance claimed to be due upon the assessment, with penalties, of $117.44. On the same day the plaintiff deposited with the defendant the sum of $113 in coin and currency, and took a receipt which recites that this sum is received by the defendant as a special deposit "on account of the plaintiff's liquor tax and penalty." The money was deposited with the defendant to prevent the levy proposed to be made by the treasurer, and to secure the payment of the assessment. It was agreed between the parties that the plaintiff would take legal advice, and if he decided to contest the assessment he would notify the defendant, and take such legal measures as should be deemed advisable to obtain a return of the money. It is proper to say that while the plaintiff in conversation with the officer admitted that he had sold cider and native wine and sweet wine, he denied in such conversation that he had sold intoxicating liquors. The plaintiff took legal advice, and, acting upon that, he demanded of the defendant a return of the money, and this being refused, he brought this action of replevin before a justice of the peace, and from the judgment of the justice an appeal was taken to this court. The money was not taken from the defendant, and the action proceeded under the statute as one for the recovery of damages.

The petition alleges that the plaintiff is the owner and entitled to the immediate possession of this money, specifically describing it, and that it is wrongfully detained from him by the defendant. The prayer of the petition is, that the plaintiff may have judgment for the delivery of the money, and in default of said delivery, that he may have judgment for the sum of $113 and interest. The answer is a general denial.

The question involved is as to the legality of the assessment, and is the same as it would be if the plaintiff had paid the money to the defendant, as treasurer, under protest, and to prevent the seizure of his goods, and had then brought an action to recover the money back. In such an action to recover the money, it would be incumbent upon the plaintiff to show that the assessment was illegal. So in this action the burden is on the plaintiff to establish the allegations of his petition, viz., that he is the owner and entitled to the immediate possession of the money, and that it is wrongfully detained from his possession by the defendant. The money was voluntarily deposited with the defendant to pay or to secure the payment of the assessment. Under the arrangement which was made between the parties, the defendant is lawfully in possession of the money until it is shown that the treasurer has no right to appropriate the money to the payment of this assessment. The burden is therefore upon the plaintiff to show the illegality of the assessment. This becomes material principally with reference to the question of fact as to whether the plaintiff, between May and October, 1891, was actually engaged in the business of trafficking in intoxicating liquors. If he shows that he was not so engaged, then the legal presumption in favor of the validity of the assessment is overcome by that fact alone, and in that case the assessment

should be held to be unauthorized. Upon the trial of this case the plaintiff offered no evidence upon this subject; although he was present in court, and although the fact was within his knowledge, he was not called as a witness. The defendant offered in evidence the duplicate and the admissions and the affidavit of the plaintiff already referred to. and this was all the evidence upon the subject. The law makes the duplicate prima facie evidence of every fact which is necessary to authorize the assessment, including the fact that the plaintiff was engaged in the business of trafficking in intoxicating liquors; and in the absence of any denial on the part of the plaintiff that he was engaged in the business, and in the absence of any evidence tending to show that he was not so engaged, the effect which the law gives to the official action of the auditor in making the assessment must prevail. The question of fact referred to, therefore must be decided against the plaintiff.

The important question, and the one about which there is the most serious contention, is whether the Dow tax can be lawfully assessed upon the business of trafficking in intoxicating liquors in a township which had voted against the sale of intoxicating liquors under the Local Option Act. It is contended on the part of the plaintiff that the right to tax the business ceased when, by the action of the voters of the township, the business became unlawful; that the only penalty to which the person carrying on the business is subject is that of fine and imprisonment; that the payment of the tax does not exempt him from the penalty, or protect him in carrying on the business, and that taxation without protection is unauthorized and cannot be sustained. On the other hand, it is contended in behalf of the defendant that by the Dow law, an assessment is required to be made in all cases upon the business of trafficking in intoxicating liquors, and the assessment must be paid by every person engaged in such a business; that this absolute requirement is not in any way qualified by the local option law; that the idea of protection to the business is not involved in the taxation of the liquor traffic, and that one engaged in the traffic cannot plead a violation of the law, or his own wrong, to excuse him from paying the tax.

By the Dow law, every person engaged in the business of trafficking in intoxicating liquors is required to pay annually a tax upon the business. A person who carries on the business in violation of the law is not excepted. The sole fact that the business is carried on authorizes the levying of the tax, and there is no provision of the local option law which exempts any dealer from the payment of the tax. But the claim is that the state has no power to tax a prohibited business, and that therefore it must be presumed that the business of selling liquors when prohibited is not included within the provisions of the Dow law, and that the law should be construed as if the prohibited business was expressly excepted. The argument against the existence of the power to tax an illegal business is, that when a business is taxed, some idea as to a protection to that business is necessarily involved—in other words, that taxation and protection are reciprocal; and inasmuch as the payment of the tax does not legalize the business nor relieve the dealer from the penalty imposed for a violation of the law, that the tax cannot be sustained. At first blush there seems to be some force in this argument, and it may be that there are occupations or trades, or kinds of business, which are so pernicious or contrary to good morals, or so detrimental to the best interests of the community, that the state ought not to even appear to countenance their existence by taxing them; and this may be true even in cases where the business is not prohibited by law; but the notion that the liquor traffic is sanctioned by taxing it disappears at once, when it is considered that

in this state the tax is imposed, and can only be sustained under the constitution, because it is a means of providing against the evils resulting from the traffic. No idea of protection is involved. The state, finding the traffic in existence, and disapproving it, taxes it, both for revenue and to diminish the evils resulting from it. And the evils resulting from carrying on the traffic when it is prohibited are certainly as great and as necessary to be provided against as when the traffic is unrestrained. The idea that protection is due to the business because of the tax can have no place in the law. If this were so, the law would be in contravention of the no-license clause of the constitution. Where there is no prohibition, the dealer is allowed to carry on the business, not because he pays the tax, but because the state has not exercised its right to prohibit the business; and if the tax is not paid, the business is not thereby rendered unlawful; the tax may be collected the same as other personal taxes; that is all. In no sense, therefore, can the business be said to be protected by the payment of the tax. The penalty imposed for carrying on the business when prohibited is simply punishment. To say that a person who engages in an illegal business may be fined and imprisoned, although he pays the tax, is simply to say that he may be punished for violating the law, which is just, and gives him no ground of complaint. He cannot be heard to say that because he has violated the law and may be punished therefor, he ought not to pay the tax.

This subject was very fully considered by the Supreme Court of Michigan in the case of Youngblood v. Sexton, 32 Mich. 406. That was a case which involved the validity of a law of Michigan providing for the taxation of the liquor traffic. The gist of the decision upon this point is contained in this paragraph of the syllabus:

"A business is not necessarily licensed or protected because of its being taxed; nor does taxing a business imply an approval of it. On the contrary, it is competent to tax an illegal business, and a tax on a business not prohibited is often, where police purposes are had in view, a means of expressing disapproval of it."

There is a very full discussion of this branch of the case in the opinion of the court, which was delivered by Judge Cooley, and his reasoning seems to me to answer all the objections that are urged to the right to tax the liquor traffic in a township where the traffic is prohibited by law.

It was held by the Supreme Court of the United States in the "License Tax Case," 5 Wal. 462, that the congress may lawfully impose special taxes upon the business of dealing in liquors, and enforce the payment of the tax by suitable penalties, although the business is prohibited by the laws of the state where the business is carried on. And it was further held that the payment of such a special tax confers no authority to carry on the business. The court say:

"There is nothing hostile or contradictory in the acts of congress to the legislation of the states. What the latter prohibits, the former, if the business is found in existence notwithstanding the prohibition, discourages by taxation. The two lines of legislation proceed in the same direction and tend to the same result. It would be a judicial anomaly as singular as indefensible, if we should hold a violation of the laws of the state to be a justification for the violation of the laws of the Union."

The principle of that decision is applicable to the case at bar. The Dow law subjects every person carrying on the business of trafficking in intoxicating liquors to a special tax. The local option law prohibits the carrying on of the business in a township which has voted against it. There is no inconsistency between those two laws. If, notwithstanding the prohibition, the business is carried on, it would be an anomaly to hold

that a violation of the law relieves from the payment of the tax. The result would be that those who are lawfully engaged in carrying on the business must pay the tax, while those who carry on the business in violation of the law are exempt. This would be putting a premium on disobedience to the law. It is no answer to this to say that the person who violates the law by carrying on the prohibited business may be punished by a fine and imprisonment. The tax is imposed, not to punish him, nor, on the other hand, in consideration of any protection due to the business. The business is not protected, but his property and the fruits of his business are protected, and in consideration of this, and the general benefits of government, he should pay the tax the same as all law-abiding citizens.

By section 4 of the local option act it is provided that if a dealer in intoxicating liquors who has paid the Dow tax shall discontinue the business by reason of the vote, a ratable part of the tax for the unexpired portion of the year shall be refunded to him. The tax is not to be refunded unless the business is discontinued. It is lawful, therefore, to retain the tax so long as the business is carried on, although the business is prohibited by law, and although the person carrying on the business is subject to fine and imprisonment. It is true that in the case stated the business is lawful when the tax is levied and paid; but if the state may justly and legally retain the tax without affording any protection to the business it would seem to be equally lawful and just to levy the tax without such protection. In the one case the dealer may secure the return of the tax by obeying the law and discontinuing the business; in the other case he may avoid the imposition of the tax by obeying the law and abstaining from the business. In neither case could the dealer complain of any hardship because of the tax.

Judgment in this case therefore will be rendered for the defendant.

J. M. Ritchie, for plaintiff.

J. A. Barber, Pros. Att'y, for defendant.

(Affirmed by the Circuit Court for the Sixth Circuit.)