LOUIS DIETZ, ADMINISTRATOR OF THE ESTATE OF LYMAN E. NOBLE, DECEASED, v. THE FOURTH NATIONAL BANK OF GRAND RAPIDS.

*Evidence—Cross-examination—Comparison of signatures.*

1. Where, in a suit to recover on certificates of deposit owned by an estate, the bank claimed they had been paid to an indorsee of the administrator, which indorsement the administrator, when sworn as a witness, denied making, and on cross-examination admitted the genuineness of his signature to several other papers shown him, they may be used by the jury for the purpose of comparing said signatures.

2. Where, in a suit by an administrator on certificates of deposit claimed to have been paid to his indorsee, he denies such indorsement, or ever having the certificates in his possession, an inventory of the estate, sworn to by him, in which such certificates are referred to, is admissible in evidence to contradict his testimony, and may be used for the purpose of comparing signatures.

Error to Kent. (Montgomery, J.) Submitted on briefs April 3, 1888. Decided April 6, 1888.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Blair, Kingsley & Kleinhans,* for appellant.

*Fletcher & Wanty,* for plaintiff.

CAMPBELL, J.  Plaintiff sued defendant to recover the amount of two certificates of deposit of $300 and $200, respectively, issued to decedent by defendant.  The only issue tried was whether plaintiff had indorsed them over to one Lyman D. Follett, to whom they were paid in good faith.

Plaintiff was a witness on his own behalf, and denied making the indorsement.  On cross-examination he was shown several documents, which he admitted bore his genuine signature; but the court refused to allow these to go to the jury for purposes of comparison.

It has been held by this Court, in a number of cases cited on the argument, that such comparison cannot usually be made with papers not legitimately in the cause for some other purpose.  The principal reason for so holding is the danger of springing new and unexpected issues on a party who cannot be expected to be prepared to meet them.

But it does not seem to us that the present case is at all analogous to those referred to.  Here the party himself was on the stand, and denied his own signature when it was shown to him.  It was open to the defense to use any reasonable test of cross-examination on his own acts, and, if he admitted signatures which it was claimed were identical in character, that fact would be of great importance.  He could not be taken by surprise by papers which he admitted to be genuine; and it is very manifest that such admitted signatures would form the best possible basis of comparison.  Witnesses to handwriting are themselves allowed to form an opinion from what they have seen of papers which they know to be genuine; and here there was no dispute about the genuineness of papers admitted under oath to be of plaintiff's own signature.  The jury could not fail to get light from the comparison, and could not be hampered by the doubts of

genuineness which would arise had they been disputed. Had plaintiff denied his signature to those documents it would have raised an immaterial and foreign issue; but, having admitted it, nothing was left but a comparison between the admitted signatures and the one in issue, which was denied. It seems to us that in such a case the chief value of cross-examination would be destroyed, unless the jury should be allowed to compare what the witness admitted he signed with what he denied. If they were satisfied his genuine signature was the same as the disputed one, the issue would be very much narrowed, and reduced to a question of imitation, which would probably be determined by circumstances, or by their estimate of the testimony as reliable or not.

Plaintiff, on oath, substantially denied that the certificates had ever been in his possession, or such knowledge as could have identified them. The inventory of the estate was produced, which was sworn to by him, and which mentioned these certificates. This was certainly admissible to contradict his testimony; and, being admitted, it was, under all the rules of evidence, a legitimate means of comparison, and should have gone to the jury.

These are the important questions presented by the record, and we think they indicate error in the rulings.

The judgment should be reversed, and a new trial ordered.

SHERWOOD, C. J., and LONG, J., concurred. CHAMPLIN and MORSE, JJ., did not sit.