## PEOPLE *v.* DAILY.

1. CRIMINAL LAW—STATUTES—BRIBERY.

In a prosecution of the sales agent of a foreign corporation for bribing the warden of the State prison at Jackson to accept second-hand, used and worn machinery in the place of new machinery ordered for the twine and cordage plant, respondent should be sentenced under 3 Comp. Laws, § 11385 (5 How. Stat. [2d Ed.] § 14894), which is the later statute, and provides that any person interested directly or indirectly in a contract with a State or county institution who shall corruptly give, offer or promise to any officer of such institution any bribe, gratuity, etc., with intent to improperly influence his official action under such contract, shall be punished by a fine not exceeding $500. The prior statute, 3 Comp. Laws, § 11311 (5 How. Stat. [2d Ed.] § 14724), is broader in its scope, and offenses within the provisions of the subsequently enacted statute are governed by the later enactment.

2. SAME—STATUTORY CONSTRUCTION—REPEAL.

A statute covering the same ground as a former act supersedes it for all further cases without the necessity of repealing words, and, in so far as the provisions are inconsistent, repeals it.

3. SAME—EVIDENCE—BRIBERY—LETTERS.

Testimony that the warden received from the son of respondent a package which contained $1,500 and a note addressed to the warden, signed by respondent, saying, "The book I am sending you is one of great value, keep it," was admissible, together with the money, and with certain letters relating to the purchase of machinery and used to compare the writing with that of the note, which the prosecution alleged had been written by respondent.

4. SAME—EVIDENCE—HEARSAY—WITNESSES.

The rule that one who has been charged with a crime should produce evidence within his control, or his failure to do so may be considered against him by the jury, does not apply to a respondent who is privileged not to produce the proof: and if a statement is made by one whom he

is not called upon to notice, his silence will not be taken as an admission, nor will it if he is restrained by fear or by doubt of his rights.

5. SAME—RIGHTS OF ACCUSED.

It was error to permit the introduction of stenographic minutes of the testimony of a witness taken at the hearing, in a foreign State, of extradition proceedings: the statements of such witness could not be treated as admissions of the accused.

Exceptions before sentence from Jackson; Parkinson, J. Submitted June 13, 1913. (Docket No. 124.) Decided January 5, 1914.

Milton Daily was convicted of bribery. Reversed.

*Thomas E. Barkworth,* for the people.

*Allan H. Frazer* and *Benjamin Williams,* for respondent.

MOORE, J. The respondent was indicted by the grand jury, on the charge of having bribed the warden of the State prison. The respondent stood mute at the arraignment, and a plea of "not guilty" was entered by the court. The jury returned a verdict of guilty. The case is here upon exceptions before sentence.

There were several counts in the indictment. Upon the trial a discontinuance was entered as to all of them except the second and the fourth. The second count reads as follows:

"And the grand jurors aforesaid, upon their oath aforesaid, do further present that heretofore, to wit, on the 1st day of June, 1907, and from thence hitherto, one Allen N. Armstrong was an executive officer of the said State of Michigan, to wit, warden of the Michigan State prison at Jackson in said State, and was duly appointed, qualified, and acting as such warden, and was then and there, under the provisions of Act No. 211 of the Public Acts of the year 1907,

authorized and empowered, in connection with the board of control of said State prison at Jackson, to purchase for said State of Michigan the necessary machinery for the equipment of a twine and cordage plant in said prison, and was then and there by said act empowered and authorized to act, vote, and decide in his, the said Allen N. Armstrong's, official capacity as warden of said State prison as aforesaid on the matter of such purchase, its kind and character, and the acceptance of bids for the furnishing and sale to the said State of Michigan of such machinery, and one Milton Daily, late of the city of Chicago, State of Illinois, then and there being interested as a bidder for the furnishing and sale of such equipment of said plant to said State of Michigan and the furnishing of machinery therefor, both in his, the said Milton Daily's, individual capacity and as sales agent for the Hoover & Gamble Company, a corporation of the State of Ohio, located at Miamisburg, Ohio, said Milton Daily, being desirous of entering into a contract with said State of Michigan, acting through the said Allen N. Armstrong as warden and the board of control of the Michigan State prison, for the sale by said Hoover & Gamble Company and said Milton Daily to the said State of Michigan of certain machinery and equipment for the said twine and cordage plant, and then and there knowing that said board of control desired and intended to purchase new machinery for the equipment of said twine and cordage plant, and that said board did not desire or intend to contract for or purchase used, worn, and secondhand machinery therefor, the said Milton Daily, well knowing the premises and that the action, vote, judgment, and decision of said Allen N. Armstrong, in his official capacity as warden of said prison as aforesaid, was, under authority of law, essential to the completion of said purchase, and well knowing that said board of control did not desire or intend to purchase secondhand, used, and worn machinery, did on, to wit, the 22d day of July, 1907, by corrupt and fraudulent agreement with the said Allen N. Armstrong, submit to the said board of control and said Allen N. Armstrong, as warden, a certain bid and offer in writing to sell to said State of Michigan certain machinery at a certain specified price therefor, to wit, $29,680.

"Said offer containing the provision that said machinery should be all new machinery, and having then and there, by corrupt agreement with said Allen N. Armstrong, induced the said Allen N. Armstrong to consent to substitute for certain of said new machines so agreed to be furnished certain other worn, used, and secondhand machinery of like description, to wit, one coarse breaker, one special breaker and spreader, one regular spreader, three drawing frames, coarse, medium, and fine, two finishing drawing frames, four two-spindle balling machines, one layer or tie cord machine, one tow picker, twenty-eight double flyer spinners, two geared spinners, and one tow card, which said secondhand, used, and worn machinery it was corruptly agreed should be furnished by said Milton Daily in place and stead of the new machinery so described above in said bid and offer, and having through such corrupt agreement with said Allen N. Armstrong secured the acceptance of said secondhand, used, and worn machinery by said Armstrong and said board of control, said board being in ignorance of such proposed substitution of said secondhand, used, and worn machinery for such new machinery, and said Milton Daily, acting through and in conjunction with said Hoover & Gamble Company, having thereafter furnished to the said State of Michigan and to said Allen N. Armstrong, as warden of said State prison, and installed in said twine and cordage plant, such secondhand, worn, and used machinery, through and in conjunction with said Hoover & Gamble Company, and having received therefor full payment from said State of Michigan at the prices fixed in said contract for said machinery as new, said Milton Daily, well knowing the premises, did thereafter, to wit, on the 13th day of May, 1908, at the city of Jackson, in said county of Jackson, corruptly give to the said Allen N. Armstrong, then and there acting as such executive officer and warden, as aforesaid, a gift or gratuity, to wit, $1,500 of lawful money of the United States, with the intent then and there to influence said Allen N. Armstrong in his action in his official capacity as warden of said State prison as aforesaid to continue his consent to the furnishing and acceptance of said secondhand, used, and worn machinery so substituted

as aforesaid as a compliance with said contract, and to refrain and abstain from communicating to the proper officers of said State or to said board of control the fact of such substitution and to permit the retention by the said Hoover & Gamble Company and the said Milton Daily of the moneys so received by them and each of them from said State of Michigan as the purchase price of said machinery and equipment, so contracted to be furnished by the said Milton Daily and said Hoover & Gamble Company in accordance with the bid and offer and contract before set forth, contrary to the form of the statute in such case made and provided and against the peace and dignity of the people of the State of Michigan."

The fourth count was a very long one, giving in detail the transaction which it is claimed constituted the offense of respondent. The count concluded as follows:

"He, the said Milton Daily, was endeavoring to fraudulently substitute for and in the place of an equal amount and kind of new machinery in the carrying out of the terms and conditions of said contract between the said State of Michigan and the said Hoover & Gamble Company, entered into a corrupt agreement with the said Allen N. Armstrong, as said warden of the Michigan State prison, to permit the said Milton Daily to fraudulently substitute for and in the place of an equal amount and kind of new machinery provided for in said contract between the said State of Michigan and the said Hoover & Gamble Company, said secondhand, used, and worn machinery for the manufacture of twine and cordage then and there owned by the said Milton Daily or then and there under the supervision and control of the said Milton Daily as aforesaid, and whereby he, the said Allen N. Armstrong, was to refrain and abstain from communicating to the proper officers of said State or to said board of control of the Michigan State prison at Jackson the fact of such substitution and to permit the retention by the said Hoover & Gamble Company and the said Milton Daily of all moneys received under or by reason of said contract between the said State of Michigan and said Hoover & Gamble Com-

pany as the purchase price of said machinery and equipment so fraudulently delivered or to be delivered under said contract to said State of Michigan.

"And the said Milton Daily and the said Hoover & Gamble Company, having thereafter furnished and delivered to the said State of Michigan, in accordance with the said corrupt agreement, so as aforesaid made between said Milton Daily and the said Allen N. Armstrong, such secondhand, used, and worn machinery above described in place and stead of like new machinery which said contract provided should be sold and delivered by said Hoover & Gamble Company to the said State of Michigan, and said Milton Daily and the said Hoover & Gamble Company having received therefor from said State of Michigan the following purchase price provided in said contract for said new machinery, to wit, the sum of $29,680, he, the said Milton Daily, for the purpose of completing, consummating, and carrying out his, the said Milton Daily's, corrupt agreement with the said Allen N. Armstrong, did thereafter, on, to wit, the 13th day of May, 1908, corruptly give to the said Allen N. Armstrong at the city of Jackson, in said county of Jackson, a gift or gratuity, to wit, the sum of $1,500 of the lawful money of the United States, with intent then and there to influence the act, vote, opinion, decision, and judgment of the said Allen N. Armstrong in the matter of the purchase of machinery for the manufacture of twine and cordage as aforesaid, the same being a matter required by law to come before said Allen N. Armstrong, as such warden in his official capacity, and to induce said Allen N. Armstrong, then and there acting in his official capacity as warden of said State prison, and in violation of his lawful duty as such warden, to continue his consent to the nonperformance of said contract, and the acceptance of said secondhand, used, and worn machinery, so substituted as aforesaid, as a sufficient compliance with said contract, and to refrain and abstain from communicating to the proper officers of said State or to the said board of control the fact of such substitution, and to permit the retention by said Hoover & Gamble Company and the said Milton Daily of the moneys so received by them and each of them from said State of Michigan as the purchase price of

said machinery and equipment so contracted to be furnished by the said Milton Daily to the said Hoover & Gamble Company in accordance with the contract before set forth, contrary to the form of the statute in such case made and provided and against the peace and dignity of the people of the State of Michigan."

A great many assignments of error are presented by the record. In our view of the case it will be unnecessary to consider all of them. A motion was made for a directed verdict and objection was made to the admission of testimony for the reasons: *First,* that the statute upon which the indictment in this case is brought, section 11311, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 14724), is repealed by a later statute, section 11385, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 14894) ; *second,* because both of said sections cover the offense with which respondent is charged, and as section 11385 fixes a smaller penalty, and is a later statute, it repeals the earlier one. The court was also requested to instruct the jury that if respondent was convicted at all it must be under the later statute. The record discloses that the trial judge was in grave doubt as to what he ought to do. He concluded to give the people the benefit of the doubt and overruled the motion and directed the jury that if the respondent was convicted it must be for an offense under section 11311, 3 Comp. Laws.

It now becomes important to refer to the statute. In 1846, the legislature passed the bribery act, so called (section 11311, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 14724), which reads:

"Every person who shall corruptly give, offer or promise, to any executive, legislative or judicial officer, after his election or appointment, and either before or after he shall have been qualified, or shall have taken his seat, any gift or gratuity whatever, with intent to influence his act, vote, opinion, decision or judgment on any matter, question, cause or proceeding which may be then pending, or may by law

come or be brought before him in his official capacity, shall be punished by imprisonment in the State prison not more than five years, or by fine not exceeding three thousand dollars, and imprisonment in the county jail not more than one year."

In 1873, by Act No. 107, the legislature passed an act with reference to the giving or receiving of bribes. It is section 11385, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 14894), which reads:

"Any person interested directly or indirectly in a contract with a State or county institution who shall corruptly give, offer or promise to any officer of such institution any bribe, gift, or gratuity whatever, with intent to improperly influence his official action under such contract, shall be punished by a fine not exceeding five hundred dollars."

It is clear that the former section is much wider in its scope than the later section. It is equally clear that the later section deals with any person who shall corruptly give, offer, or promise to any officer of a State or county institution, any bribe, gift, or gratuity with intent to improperly influence his official action in relation to any contract in which the person so corruptly giving, offering, or promising is directly or indirectly interested. A reference to the counts in the indictment which we have quoted shows that those counts come directly within the provisions of section 11385. There is no great difference of opinion as to the effect of the enactment of a later statute covering the same subject-matter as an earlier statute.

In *Porter* v. *Edwards,* 114 Mich. 640 (72 N. W. 614), Justice LONG, speaking for the court, said:

"The rule is well settled that a new statute covering the same ground as the former act supersedes it for all further cases, without the necessity of repealing words. *People* v. *Hobson,* 48 Mich. 27 [11 N. W. 771]. A statute is repealed by a later one in so far as its provisions are inconsistent with it, or are cov-

ered by it. *Attorney General* v. *Amos,* 60 Mich. 372 [27 N. W. 571]."

See, also, *Board of Supervisors* v. *Hubinger,* 137 Mich. 72 (100 N. W. 261, 4 Am. & Eng. Ann. Cas. 792), and the many cases cited therein; *Pierre Viaus Maple Co.* v. *Dairy and Food Commissioner,* 154 Mich. 73 (117 N. W. 553) ; and the many other cases cited in the brief of counsel. Applying these principles of law to the instant case, we think it must be said that the case stated in the indictment comes within the later section of the statute, and that the jury should have been instructed that if respondent was found guilty at all it should be under the later statute.

If there was no other error in the case, it is probable the respondent might be sentenced under the later statute, making a new trial unnecessary. See *People* v. *Farrell,* 146 Mich. 264 (109 N. W. 440).

In the course of the trial the warden testified in substance that the son of the respondent brought and delivered to him a package containing $1,500 and a note reading:

"*Dear Armstrong:* The book I am sending you by Frank is one of great value. Keep it. Yours, Daily."

This note was offered in evidence. It was objected to for several reasons, one of which was that there was no proof that the signature was the respondent's signature. For the purpose apparently of covering this objection, other letters were introduced in evidence which had been written by Mr. Daily to the warden, in due course of the business, and the jury were allowed to compare these signatures. This is assigned as error. There is no uniformity in the courts with reference to permitting handwriting to be introduced solely for the purpose of comparing handwriting. It is insisted on the part of the people that it was competent to show what was done to procure the contract which was in fact made, and to in-

troduce in evidence the correspondence which occurred in relation to the transaction, and that when the correspondence was once in it was competent to permit the jury to compare the handwriting. *Dietz v. Fourth Nat. Bank,* 69 Mich. 287 (37 N. W. 220). An inspection of these letters shows they relate to what was done in procuring the contract and installing the plant, and we think it cannot be said it was error to admit them. The letter contained in the package was admissible in evidence just as the money contained therein was competent as being part of the transaction, and might have been received in evidence without any proof in relation to handwriting. When in evidence the jury were warranted in drawing therefrom such inferences as sensible men in the everyday transactions of life would be justified in drawing therefrom.

Another group of assignments of error require attention. We quote from the brief of counsel:

"That the court permitted the witness, Samuel B. Dennison, to read in evidence the stenographic notes of the testimony of one Leonard Busby, as well as of testimony of defendant, given in a habeas proceeding before Judge Landis in Chicago, Ill. Dennison was sworn as a witness. His testimony shows that he was not an official court stenographer but under salary in the State's attorney's office; that he was working shorthand in the office; that they get all their notes there by talking machines; that he had left out parts of the testimony. Objections to this testimony were made, overruled, and exceptions taken. Later in the trial Mr. Dennison was recalled by the State, to again read his transcripts and notes of the testimony given on the Chicago proceedings by one Leonard Busby. No foundation for the testimony whatever was laid. It was not shown that Busby was absent from the State of Michigan, or why he was not produced in court. No testimony to this effect was produced. The objection made to this testimony at the time by defendant's counsel, is as follows:

"*Mr. Frazer:* I object, may it please your honor, to his reading the testimony of Mr. Busby at Chicago * * * on the grounds: *First,* that any statement made by Mr. Busby there, or any testimony that he gave there, is incompetent, irrelevant, and immaterial. *Second,* upon the ground that any statement or testimony given in the proceedings in Chicago are not binding upon Mr. Daily, nor such as he is called upon, or was called upon, to answer. *Third,* for the reason that the testimony now proposed as coming from Mr. Dennison, who was present and heard him make these statements—such testimony is not admissible here against Mr. Daily, for the reason it is hearsay. *Fourth,* that it is not proper redirect examination. This witness was here and has been excused. * * * *Sixth,* that the testimony given under the circumstances upon that hearing was not such as called for an answer from Milton Daily, nor could his silence be considered as assenting to the statements alleged to be made by the witness Busby upon such hearing. *Seventh,* for the reason that the witness Busby is not present, and we are debarred by this method, of the cross-examination of Mr. Busby in regard to his statements. *Eighth,* the testimony proposed, so far as the defendant Daily is concerned, is purely hearsay. I desire, your honor, to interpose another objection to the testimony of this witness, upon the ground that putting in Mr. Busby's testimony through the witness Dennison, the stenographer, it deprives my client of his constitutional privilege of being confronted with the witness, and for the further reason deprives him of the right of cross-examination of this witness."

We perhaps cannot state the position of the people as to the admissibility of this evidence better than to quote from the brief of the prosecutor:

"It was the contention of the prosecution at the trial, and it is here reaffirmed, that this testimony was proper as an admission of respondent, under the familiar rule that, where one is charged with a crime and remains silent under the imputation, it may be taken into consideration by the jury as bearing upon the question of his guilt."

This contention does not impress us favorably. In Howell's Fourth Edition of Tiffany's Criminal Law, p. 561, it is said:

"There is no doubt that a jury may regard with suspicion a failure of a party to produce testimony which is in his power, and which would throw light upon matters left without other proper evidence. But this rule has never been applied to those cases where the law, on grounds of public policy, has established privileges against being compelled to produce it. Thus, it is well settled that, where a man avails himself of his privilege to decline answering questions, no unfavorable inference can be allowed to be drawn from his silence."

At page 636 it is said:

"Confessions may also be inferred from the conduct of the defendant, and from his silent acquiescence in the statements of others respecting himself, and made in his presence. If a statement is made in the hearing of another in regard to facts affecting his rights, and he makes a reply, wholly or partially admitting the truth, then the declaration and reply, it is said, are both admissible; the reply, because it is the act of the party, who will not be presumed to admit anything affecting his own interest, unless it be true, and the declaration, because it may give meaning to the reply. In some cases where a similar declaration is made in one's hearing, and he makes no reply, it may be a tacit admission of the facts. But this depends on whether he hears and understands the statement and comprehends its bearing, and whether the truth of the facts embraced in the statement are within his knowledge, and whether he is in such situation that he is at liberty to reply, and whether the statement is made under such circumstances and by such person as naturally calls for a reply, if he did not intend to admit it. But if the statement is made by one whom he is not called on to notice, or if he is restrained by fear, or by doubts of his rights, or by a belief that his security is best promoted by silence, then no inference can be drawn from that silence."

For a discussion at length of the law applicable to admissions, see *People* v. *Courtney*, *ante*, 137 (144 N. W. 568).

A reference to the record shows that respondent was resisting extradition, one of his claims being that he was not guilty. We think the testimony was incompetent.

The last assignment of error requiring comment is to the effect that the people failed to make a case, and the court should have directed a verdict of not guilty. The record is a very voluminous one. The competent evidence contained therein is too long to be set out here. A reading of it, however, satisfies us that, if believed by the jury, the competent evidence offered on the part of the people and the inferences to be fairly drawn therefrom made a question of fact to be passed upon by the jury.

We do not deem it necessary to discuss the other assignments of error. For the reasons stated, the verdict of guilty is set aside, a new trial is ordered, and the case is remanded for further proceedings.

McALVAY, C. J., and BROOKE, STONE, OSTRANDER, and STEERE, JJ., concurred. KUHN and BIRD, JJ., did not sit.